[No. B219587. Second Dist., Div. Eight. Mar. 9, 2011.]

MICHAEL GERBOSI, Plaintiff and Respondent, v.
GAIMS, WEIL, WEST & EPSTEIN, LLP, et al., Defendants and Appellants.
ERIN FINN, Plaintiff and Respondent, v.
GAIMS, WEIL, WEST & EPSTEIN, LLP, et al., Defendants and Appellants.

436

## COUNSEL

Proskauer Rose, Bert H. Deixler, Travis P. Brennan; Kendall Brill & Klieger and Bert H. Deixler for Defendants and Appellants.

Johnson & Johnson, Neville L. Johnson, Douglas L. Johnson and Lan P. Vu for Plaintiffs and Respondents.

## OPINION

**BIGELOW, P. J.**—This appeal arises from two of many lawsuits seeking damages allegedly caused by the activities of private investigator Anthony Pellicano and others. Michael Gerbosi has filed a complaint against Pellicano and Gaims, Weil, West & Epstein, LLP (Gaims),[1] a law firm that allegedly accepted the fruits of Pellicano's activities. Erin Finn has also filed a complaint against Gaims. This appeal follows protracted proceedings on separate anti-SLAPP (strategic lawsuit against public participation) motions filed by Gaims to strike Gerbosi's and Finn's complaints. (See Code Civ. Proc., § 425.16.)[2] The trial court issued an order denying both motions, leaving Gerbosi's and Finn's complaints to proceed unabated against Gaims.

---

[1] Our references to Gaims include Alan Jay Weil, a partner in the Gaims firm.

[2] All statutory references are to the Code of Civil Procedure, unless otherwise stated.

Later, the court entered an order jointly awarding attorneys' fees to Gerbosi and Finn in the amount of roughly $220,000.

Gaims appealed and we affirm the trial court's rulings on Gaims's anti-SLAPP motion to strike Gerbosi's complaint. All of Gerbosi's causes of action against the law firm may proceed, and Gerbosi may recover attorneys' fees incurred in opposing the anti-SLAPP motion. We affirm in part the trial court's rulings on Gaims's anti-SLAPP motion to strike Finn's complaint. Her causes of action alleging unlawful-wiretapping-related claims may proceed, but her causes of action alleging that Gaims engaged in wrongful acts in the course of underlying litigation must be stricken. As a result, the attorneys' fees in favor of Finn must be denied.

## FACTS

*Background*

A long time ago, Finn dated Robert Pfeifer, a former executive at Sony Records, Hollywood Records, and Z-Axis, Ltd., a video game developer. According to Pfeifer, he ended their relationship in 2000 upon learning that Finn operated an Internet prostitution service. About the same time that Pfeifer and Finn were parting, Z-Axis fired Pfeifer for the stated reason that he was using illegal drugs. Pfeifer then sued Z-Axis for wrongful termination. During the summer of 2000, Finn testified at a deposition in Pfeifer's wrongful termination case, stating that she had seen him using illegal drugs. Pfeifer and his lawyers then hired Pellicano to "investigate" Finn, ostensibly in her role as a witness in Pfeifer's civil action against Z-Axis. By the end of 2000, Pfeifer had retained Gaims. During the course of representing Pfeifer, Gaims had communications with Pellicano.

In addition to representing Pfeifer in his wrongful termination case against Z-Axis, Gaims acted as Pfeifer's counsel in a number of other matters. In October 2000, Gaims successfully represented Pfeifer in a domestic harassment injunction matter filed by Finn. Gaims also represented Pfeifer in a collection case filed against Finn. The case involved a claim that Finn had not repaid a $10,000 loan from Pfeifer. Finn filed a cross-complaint in the collection case, alleging Pfeifer had stalked and harassed her, and Gaims defended Pfeifer against Finn's claims. Gaims also represented Pfeifer in another action he filed against Finn in which he alleged invasion of privacy, fraud and intentional infliction of emotional distress (IIED).[3]

---

[3] Pfeifer was also connected to an identity theft civil case filed against Finn by a fashion model. In that parallel case, the fashion model alleged that Finn had misused a photograph of the model without permission. Pfeifer paid the model's legal fees in the misappropriated photograph case.

In November 2001, Pfeifer and Finn executed a settlement agreement and mutual release of all claims that then existed or might exist between them.

In early 2006, a federal grand jury returned an indictment against Pellicano and Pfeifer and others on conspiracy and wiretapping charges. Eventually, Pfeifer agreed to plead guilty and to testify against Pellicano. In March 2008, Pfeifer testified against Pellicano at his criminal trial.

*The Operative Complaints*

Michael Gerbosi lived next door to Finn when the events summarized above transpired. On April 7, 2008, Gerbosi (represented by the Johnson & Johnson law firm) filed a civil complaint for damages against Pacific Bell Telephone Company, Pellicano, Pfeifer, and Gaims. (Super. Ct. L.A. County, No. BC388664.) Gerbosi's complaint alleges the following causes of action as to all defendants: unlawful wiretapping (Pen. Code, § 631); unlawful eavesdropping (Pen. Code, § 632); common law intrusion; invasion of privacy (Cal. Const., art. I, § 1); IIED; negligence; and, as to Pacific Bell and Gaims only, negligent supervision. The gist of Gerbosi's action is found in his allegations that he engaged in confidential communications with Finn in 2000 and 2001, and that Pfeifer, Pellicano, Pacific Bell, and Gaims, acting in furtherance of a common scheme, intercepted his confidential communications by unlawful wiretaps and unlawful eavesdropping. Gerbosi alleges he became aware of the wrongful interception of his confidential communications in the year prior to filing his complaint, the apparent implication being that he learned of the unlawful activity as a result of the criminal proceedings against Pellicano.

On April 9, 2008, Finn (represented by The Ball Law Firm LLP) filed a complaint against Pfeifer and Gaims. (Super. Ct. L.A. County, No. BC388812.) Finn's complaint alleges seven causes of action: invasion of privacy (Cal. Const., art. I, § 1); IIED; unlawful eavesdropping (Pen. Code, §§ 632, 637.2); unfair competition (UCL; Bus. & Prof. Code, § 17200); negligence; malicious prosecution; and abuse of process. The substance of Finn's action is embodied in her allegations that Pfeifer, Pellicano, and Gaims had "set out to destroy" Finn after she and Pfeifer separated, and that they conspired to use, and did use, illegal wiretaps and harassing lawsuits to accomplish their goal.

In May 2008, the trial court found Gerbosi's case and Finn's case to be related, and issued an order assigning the cases to a common trial judge for all purposes.[4]

---

[4] The record shows that a dozen or so cases have been filed as a result of Pellicano's acts as a "private investigator." The cases are being collectively handled by a single trial court judge under the case title *In re Pellicano Cases* (Super. Ct. L.A. County, No. BC316318).

*The Anti-SLAPP Motions*

On September 11, 2008, Gaims filed a special motion to strike Finn's complaint under the anti-SLAPP statute. The motion, with its supporting declarations and exhibits occupies nearly 800 pages of Gaims's appendix on appeal. Gaims's motion argued that all of Finn's causes of action "arose from" the firm's acts in furtherance of its petitioning rights vis-à-vis representing Pfeifer during the course of the litigation that had transpired between Pfeifer and Finn in 2000 and 2001. Gaims argued that its petitioning activities in representing Pfeifer constituted "protected activities" within the meaning of the anti-SLAPP statute, and that Finn could not show a probability of prevailing on her claims for several reasons, including, among others, that Finn's causes of action were barred by the applicable statutes of limitations.

On September 22, 2008, Gaims filed an anti-SLAPP motion to strike Gerbosi's complaint. The motion, with its supporting declarations and exhibits occupies more than 300 pages of Gaims's appendix on appeal. The basic thrust of Gaims's anti-SLAPP motion to strike Gerbosi's complaint was that all of his causes of action, as did Finn's, arose from Gaims's activities as Pfeifer's lawyers in the course of the litigation between Pfeifer and Finn in 2000 and 2001.

In September 2008, the Johnson & Johnson law firm substituted in as counsel of record for Finn. A month later, Finn and Gerbosi (represented by the Johnson & Johnson firm) filed a joint motion to conduct discovery. In November 2008, the trial court granted the discovery motion.

In August 2009, almost one year after Gaims filed its anti-SLAPP motions, Finn and Gerbosi filed separate oppositions to the firm's motions. The opposition papers, including supporting declarations and exhibits, cover more than 1,400 pages of the appendix on appeal. Gaims's reply papers, including additional declarations and evidentiary objections cover another 400 or so pages of the appendix on appeal.

On September 8, 2009, the parties argued both of Gaims's anti-SLAPP motions to the trial court, and the court took the motions under submission. On September 22, 2009, the court issued an extensive written order denying both anti-SLAPP motions. At the same time, the court's order indicated that it intended to award attorneys' fees to Gerbosi and Finn pursuant to section 128.5, as incorporated within section 425.16, subdivision (c).

In November 2009, Finn and Gerbosi submitted papers in which they requested more than $220,000 in attorneys' fees and costs. Filings in opposition and reply followed. The papers addressing the issue of attorneys'

fees cover hundreds more pages of Gaims's appendix on appeal. On December 15, 2009, the trial court issued an order fixing attorneys' fees in the amount of $220,730, and fixing costs in the amount of $1,706.80.

Gaims filed a timely notice of appeal.

## DISCUSSION

### I. *The Anti-SLAPP Statute*

■ The Legislature enacted the anti-SLAPP statute to address the societal ills caused by meritless lawsuits that are filed to chill the exercise of First Amendment rights. (§ 425.16, subd. (a).) The statute accomplishes this end by providing a special procedure for striking meritless, chilling causes of action at the earliest possible stages of litigation. The statute requires two steps for striking a cause of action. In the first step, the court is tasked with determining whether the defendant has made a threshold showing that the challenged cause of action is one "arising from protected activity." In this step, the moving defendant must demonstrate that the acts upon which the plaintiff's claim is based were taken in furtherance of the defendant's right of petition or free speech under the federal or state Constitution. If the court finds this threshold showing has been made by the defendant, the court must then determine whether the plaintiff has demonstrated a "probability of prevailing" on his or her claim. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685] (*Equilon*).) A cause of action may be stricken under the anti-SLAPP statute only when both steps are satisfied, that is, when the defendant has demonstrated that the plaintiff's claim "arises from protected [activity]" on the part of the defendant, and the plaintiff fails to show a "probability of prevailing" on his or her claim. (See *PrediWave Corp. v. Simpson Thacher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, 1218 [102 Cal.Rptr.3d 245] (*PrediWave*).)

■ A cause of action "arising from protected activity" means that the defendant's acts underpinning the plaintiff's cause of action involved an exercise of the right of petition or free speech. (See *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 [124 Cal.Rptr.2d 519, 52 P.3d 695].) It does not mean that the plaintiff filed his or her lawsuit "in response to" the defendant's acts. (*Ibid.*) A defendant does not establish that a cause of action "arises from" an act in furtherance of the right of petition or free speech merely by showing that the plaintiff filed his or her lawsuit in retaliation for the defendant's petitioning or speech activities. The defendant must establish that the plaintiff's cause of action is actually *based on* conduct in exercise of those rights. (See, e.g., *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1002 [113 Cal.Rptr.2d 625].) In determining whether the

first step has been established, i.e., the "arising from" element of the anti-SLAPP statute, a court must consider the pleadings and any supporting and opposing affidavits stating the facts upon which alleged liability is based. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 [124 Cal.Rptr.2d 530, 52 P.3d 703].)

The statute's second element—a "probability of prevailing"—means a reasonable probability of prevailing, not prevailing by a preponderance of the evidence. For this reason, a court must apply a "summary-judgment-like" test (*Taus v. Loftus* (2007) 40 Cal.4th 683, 714 [54 Cal.Rptr.3d 775, 151 P.3d 1185]), accepting as true the evidence favorable to the plaintiff and evaluating the defendant's evidence only to determine whether the defendant has defeated the plaintiff's evidence as a matter of law. (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 823 [33 Cal.Rptr.2d 446], disapproved on other grounds in *Equilon, supra,* 29 Cal.4th at p. 68, fn. 5.) A court may not weigh credibility or compare the weight of the evidence. The court's single task is to determine whether the plaintiff has made a prima facie showing of facts supporting his or her cause of action. (*ComputerXpress, Inc. v. Jackson, supra,* 93 Cal.App.4th at p. 1010.)

An appellate court reviews an order denying an anti-SLAPP motion under the de novo standard of review. (*PrediWave, supra,* 179 Cal.App.4th at p. 1220.) As a result, we will employ the same two-step procedure as did the trial court in determining if Gaims's anti-SLAPP motions were properly denied.

## II.  *Gerbosi's Complaint*

Gerbosi was a stranger to the myriad litigation between Pfeifer and Finn. He had no connection to Gaims's representation of Pfeifer, except happenstance. Accordingly, the wiretapping and privacy invasions alleged by Gerbosi do not "arise from" any protected activity by Gaims on behalf of Pfeifer. Gerbosi's complaint alleges that Gaims unlawfully listened in on his private conversations, and these allegations are the beginning and end of the firm's anti-SLAPP motion. Gaims's status as a lawyer, unrelated to any representation of any client in relationship to Gerbosi does not bring Gaims under the protective umbrella for acts in furtherance of protected "petitioning" activity. In sum, the alleged criminal conduct does not fall within "protected activity" as defined by the anti-SLAPP statute. (*Novartis Vaccines & Diagnostics, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2006) 143 Cal.App.4th 1284, 1289–1296 [50 Cal.Rptr.3d 27] (*Novartis Vaccines*) [a plaintiff's claims for damages allegedly caused by criminal vandalism does not implicate the anti-SLAPP statute even where it is shown that the defendant's act could be deemed related to protesting activity].) The cases

cited by Gaims do not support its implicit proposition that a lawyer may employ the anti-SLAPP statute to strike a cause of action merely because he or she is a lawyer. The rule is to the contrary. (See *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 741 [3 Cal.Rptr.3d 636, 74 P.3d 737] (*Jarrow Formulas*) [not all attorney conduct related to litigation or representation of a client is protected under the anti-SLAPP statute].)

■ We end our review here. (*Freeman v. Schack* (2007) 154 Cal.App.4th 719, 733 [64 Cal.Rptr.3d 867] [when a defendant does not show that a "protected activity" underpins the plaintiff's claims, it is irrelevant whether the plaintiff has shown a "probability of prevailing" on his or her claims].) Because the anti-SLAPP statute *does not apply* given the nature of Gerbosi's causes of action against Gaims, the firm's arguments that Gerbosi cannot prevail because, for example, his claims are barred by the applicable statutes of limitations, are misplaced. Gaims may well have valid defenses to Gerbosi's wiretapping-based claims, but a special motion to strike under the anti-SLAPP statute simply was not the proper procedural tool for presenting those defenses.

## III. *Finn's Complaint*

■ Finn's complaint stands in a different light because Gaims represented Pfeifer in the underlying litigation involving Finn. Again, however, Gaims's status as a member of the bar does not automatically confer the protections of the anti-SLAPP statute as to all of Finn's claims. To the extent Finn alleges criminal conduct, there is no protected activity as defined by the anti-SLAPP statute. (*Novartis Vaccines, supra,* 143 Cal.App.4th at pp. 1289–1296.) As a result, Finn's first cause of action for invasion of privacy, third cause of action for eavesdropping, and fourth cause of action for violation of the UCL (which is predicated on violations of the Pen. Code) are outside the protective umbrella of an anti-SLAPP special motion to strike procedure. Each is based on alleged criminal activity.

To defeat this conclusion Gaims relies on *Flatley v. Mauro* (2006) 39 Cal.4th 299 [46 Cal.Rptr.3d 606, 139 P.3d 2] (*Flatley*) in support of its argument that it could invoke the anti-SLAPP statute. More specifically, Gaims argues that it satisfied the first step of the anti-SLAPP procedure because Finn's opposition papers did not establish either (1) that Gaims has conceded its conduct was illegal, or (2) that the evidence "conclusively" proves that Gaims engaged in illegal conduct. We read *Flatley* differently than does Gaims. This is the predominant rule to be taken away from *Flatley*: "[S]ection 425.16 cannot be invoked by a defendant whose *assertedly protected activity* is illegal as a matter of law and, for that reason, not protected by constitutional guarantees of free speech and petition." (*Flatley,*

*supra*, at p. 317, italics added.) In *Flatley*, the issue was whether assertedly protected activity—a letter and subsequent telephone calls by a lawyer demanding "a seven-figure payment" to avoid litigation—was protected activity. (*Id.* at p. 305.) The defendant claimed the communications were a prelitigation settlement offer. The plaintiff claimed they were activities constituting criminal extortion. The Supreme Court found that the letter and telephone calls were criminal extortion as a matter of law; on that foundation it ruled that the lawyer could not invoke the anti-SLAPP statute.

We understand *Flatley* to stand for this proposition: when a defendant's assertedly protected activity *may or may not be* criminal activity, the defendant may invoke the anti-SLAPP statute unless the activity is criminal as a matter of law. In coming to this result, the Supreme Court observed that an activity could be deemed criminal as a matter of law when a defendant concedes criminality, or the evidence conclusively shows criminality. At the same time, the Supreme Court cautioned that a defendant's *"mere assertion* that his [or her] underlying activity was constitutionally protected" will not suffice to shift to the plaintiff the burden of showing that the defendant's underlying activity was criminal, and not constitutionally protected. (*Flatley, supra*, 39 Cal.4th at p. 317, italics added.) As the Supreme Court aptly concluded, such a rule would "eviscerate the first step of the two-step inquiry set forth in the [anti-SLAPP] statute." (*Ibid.*) "While a defendant need only make a prima facie showing that the underlying activity falls within the ambit of the statute, . . . the statute envisions that the courts do more than simply rubberstamp such assertions before moving on to the second step." (*Ibid.*)

■ Here, to the extent that Gaims's anti-SLAPP motion sought to strike Finn's privacy-related causes of action, the assertedly protected activity must be said to be wiretapping in the course of representing a client. Under no factual scenario offered by Gaims is such wiretapping activity protected by the constitutional guarantees of free speech and petition. Gaims's argument that its evidence showed it did not do the acts that Finn alleges it did is more suited to the second step of an anti-SLAPP motion. A showing that a defendant did not do an alleged activity is not a showing that the alleged activity is a protected activity. By way of an extreme example, if Finn filed a personal injury complaint alleging that Gaims physically assaulted her in an attempt to dissuade her from testifying against Pfeifer in his wrongful termination lawsuit, could Gaims invoke the anti-SLAPP statute to strike the complaint by denying Finn's assault allegations? We are certain that the answer is no. The bottom line is this: section 425.16 was not enacted to protect an attorney who allegedly hired an "investigator" like Anthony Pellicano to wiretap telephones so as to get an unfair advantage in a client's legal matters.

Because Finn's causes of action alleging that Gaims engaged in wiretapping activity do not fall within the protective ambit of the anti-SLAPP statute, we need not determine whether Finn showed a probability of prevailing on those causes of action. Again, the record suggests that Gaims may well have winning defenses to Finn's causes of action alleging criminal activity, but those defenses must be established by a procedural tool other than the anti-SLAPP motion procedure.

■ This leaves for our consideration Finn's second cause of action for IIED, fifth cause of action for negligence, sixth cause of action for malicious prosecution, and seventh cause of action for abuse of process, all of which "arise from" Gaims's representation of Pfeifer in the underlying litigation against Finn. We agree with Gaims that the anti-SLAPP statute applies to these causes of action. (*Jarrow Formulas, supra*, 31 Cal.4th at p. 735 [anti-SLAPP statute applied to a cause of action for malicious prosecution]; *PrediWave, supra*, 179 Cal.App.4th at p. 1221 [statute applied to cause of action for abuse of process].) We must therefore determine under the second step of the anti-SLAPP procedure whether Finn showed a "probability" that she would prevail on her litigation-related causes of action. This requires us to determine whether Finn showed that she has a *reasonable possibility* of winning, not whether she showed that she has a preponderance of a chance of winning. Although the burden on a plaintiff is low, we find Finn did not show a reasonable possibility that she can win her litigation-related causes of action. We thus disagree with the trial court in this limited area.

The insurmountable obstacle for Finn is the statute of limitations. Her litigation-related causes of action for IIED, negligence, malicious prosecution, and abuse of process allege that she suffered harm, mainly emotional distress, during 2000 and 2001. This harm was caused by the litigation tactics employed by Gaims during 2000 and 2001, to "destroy" Finn, in the course of representing Pfeifer in the underlying litigation. It is undisputed that the litigation ended in November 2001, when Pfeifer and Finn executed the settlement agreement and joint release of claims. It is undisputed that Finn filed her litigation-related causes of action in April 2008, *more than six years after the litigation ended.* We agree with Gaims that these undisputed facts establish that Finn's litigation-related causes of action are time-barred, meaning she cannot prevail on those causes of action.

■ To avoid this conclusion, Finn first argues that the accrual dates of her causes of action were delayed under the "discovery rule." She generally makes this argument as to all of her causes of action, including her litigation-based claims, but the actual content of her argument is limited to a discussion of her "discovery" of the wiretapping aspects of her action. We need not decide whether Finn is correct that there is a factual question as to

when she truly discovered defendants' wiretapping activities, because that issue is not relevant to her litigation-related causes of action. In short, Finn's argument does not persuade us that the discovery rule can be applied to her litigation-based causes of action. The discovery rule applies when it is difficult for a plaintiff to observe or understand the nature of a defendant's wrongful act, or when an injury or its cause is hidden or beyond that which an ordinarily reasonable person could be expected to understand. (*Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1248 [7 Cal.Rptr.3d 576, 80 P.3d 676].) That rule simply makes no sense in the context of Finn's litigation-related causes of action because the theory of Finn's litigation-related causes of action is that she knew about the existence of the underlying litigation, and that this known exposure to the litigation caused her to suffer emotional harm. If Finn desired to preserve a civil remedy for that known harm, it behooved her to pursue the underlying litigation to a favorable termination, and then to file a timely litigation-related cause of action.

Finn alternatively argues that the trial court correctly found that Gaims is equitably estopped from asserting the statute of limitations as a defense. The problem with Finn's alternative argument is that she does not point to any evidence showing any act by Gaims *after* November 2001 that deterred Finn from filing her litigation-related causes of action until 2008. Finn's argument is that she did not file her litigation-related causes of action until 2008 because Gaims's intimidation during the litigation in 2000 and 2001 caused her to live in "perpetual fear" that Gaims would "sue her again" someday. We reject Finn's argument because it essentially posits the proposition that a statute of limitations on a litigation-related cause of action never begins to run where the allegedly wrongful litigation dissuades the filing of a lawsuit based on the litigation. In other words, Finn basically argues that a tort itself excuses the filing of a cause of action based on the tort when the tort is so bad that it frightens a person into sitting on his or her rights. We disagree.

The primary case upon which Finn relies, *Ortega v. Pajaro Valley Unified School Dist.* (1998) 64 Cal.App.4th 1023 [75 Cal.Rptr.2d 777] (*Ortega*), is distinguishable. In *Ortega*, a public school teacher, Ancira, molested Mona Lisa, a 12-year-old student, in late 1986. In early 1987, Mona Lisa confided to friends that Ancira had molested her, and, at that time, the police and the school investigated the matter. During the investigations, school officials stated their distrust of Mona Lisa's accusation, mistreated her and her parents, expressly lied to Mona Lisa's parents that Ancira had no history of similar accusations (in fact, Ancira had been prosecuted and acquitted on molestation charges). Further, they asked teachers at the school to contact the police and vouch for Ancira's good character and impugn Mona Lisa's character. (*Id.* at p. 1034.) When Ancira filed a complaint against Mona Lisa and her parents for defamation, the school district supported his lawsuit. In 1988, Ancira molested Victoria, another 12-year-old student, but the incident remained

hidden. Then, in July 1992, just prior to Victoria's senior year in high school, she filed a report with the district attorney's office, and authorities initiated a criminal case. (*Id.* at pp. 1037–1039.) In November 1992, Ancira pleaded no contest to molesting Victoria. In August 1993, Mona Lisa filed an action against Ancira and the school district. (*Id.* at p. 1041.)

At the trial of Mona Lisa's civil action, the court submitted the issue of equitable estoppel to assert the statute of limitations to a jury. Based on evidence establishing the facts summarized above, a jury found that the school district was equitably estopped from asserting that statute of limitations because (1) its activities had deterred Mona Lisa from initiating her lawsuit, and (2) Mona Lisa had commenced her action within a reasonable time after the deterring effects of the district's activities had ended. (*Ortega, supra*, 64 Cal.App.4th at p. 1030.) The Sixth District Court of Appeal found the jury's findings were supported by substantial evidence.

*Ortega* is not applicable to Finn's litigation-related causes of action in her current action because the facts are different. In *Ortega*, the evidence showed that the defendant school district had engaged in acts *after* the tort of molestation occurred, and that it was those after-the-wrong actions which deterred the plaintiff from filing her lawsuit. In Finn's current case, there is not even an allegation that Gaims engaged in any act *after* the tort, to wit, the prosecution of wrongful litigation, which deterred her from filing her lawsuit. *Ortega* does not support Finn's argument that severe tortious behavior in and of itself may estop an adult defendant from asserting the statute of limitations.

Finn next argues that the one-year statute of limitations prescribed by section 340.6 for a legal malpractice claim does not apply to her litigation-related causes of action. We do not find this issue to be dispositive in addressing the issue presented. Finn does not explain how it makes a difference whether a one-year malpractice limitations period applies, or a two-year tort limitations period applies. In other words, Finn does not explain how her claims—which were filed more than six years after the end of the underlying litigation—are timely apart from section 340.6. Finn has not cited us to a seven-year statute of limitations applicable to her claims.

We do not address Finn's argument that the November 2001 settlement agreement, which she contends was coerced, does not bar her litigation-related claims. The question of whether the settlement agreement acts as an enforceable bar to Finn's current claims is not important. Regardless of its validity, the agreement demarks the end date of the underlying litigation. As such, it provides a discernable accrual date for purposes of the statute of limitations, which we find bars Finn's litigation-related claims.

## IV.  *Attorneys' Fees*

■  The anti-SLAPP statute requires the trial court to award reasonable attorneys' fees to a prevailing plaintiff pursuant to section 128.5 when the court determines that a defendant's anti-SLAPP motion was "frivolous or . . . solely intended to cause unnecessary delay." (§ 425.16, subd. (c)(1) ["shall" award].) Frivolous in this context means that any reasonable attorney would agree the motion was totally devoid of merit. (*Decker v. U.D. Registry, Inc.* (2003) 105 Cal.App.4th 1382, 1392 [129 Cal.Rptr.2d 892].) An order awarding attorneys' fees pursuant to section 128.5, as incorporated in section 425.16, subdivision (c), is reviewed under the abuse of discretion test. (*Carpenter v. Jack in the Box Corp.* (2007) 151 Cal.App.4th 454, 469–472 [59 Cal.Rptr.3d 839].) A ruling amounts to an abuse of discretion when it exceeds the bounds of reason, and the burden is on the party complaining to establish that discretion was abused. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193].)

Turning to Gaims's anti-SLAPP motion attacking Gerbosi's complaint, we find the trial court was within its discretion in determining that no reasonable attorney would have believed there was merit to the attempt to strike Gerbosi's complaint, not given the nature of his claims. Whatever defenses Gaims may have, those defenses could not be established by way of an anti-SLAPP motion. Under the anti-SLAPP statute, Gaims's motion would have had merit only if predicated on a showing that Gerbosi sued Gaims for exercising its constitutional rights, which he did not.

■  Gaims's anti-SLAPP motion as to Finn's complaint is different because, for the reasons we explained above, it had partial merit. Section 128.5, subdivision (b)(2), defines frivolous to mean "totally and completely" without merit, or for the "sole" purpose of harassing an opposing party. When a motion has partial merit, it is not "totally and completely" without merit, nor can it be said that its "sole" purpose is to harass.

The trial court awarded attorneys' fees upon a joint application by Gerbosi and Finn. Because we have found that Gaims's anti-SLAPP motion was not without merit as to all of Finn's causes of action, the cause must be remanded to the trial court to consider anew the attorneys' fee issues. On remand, the court must make a reasonable apportionment of fees as between Gerbosi and Finn, and enter an award of fees in favor of Gerbosi only. And, in doing so, Gerbosi may only recover attorneys' fees incurred in opposing Gaims's anti-SLAPP motion, not his attorneys' fees for the entire action to date. (*Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 39 Cal.App.4th 1379 [46 Cal.Rptr.2d 542].)

We reject Gaims's contention that the trial court imposed sanctions without due process because (1) the oppositions to its anti-SLAPP motions filed by Finn and Gerbosi "did not brief whether the anti-SLAPP motions were frivolous," (2) the trial court "never mentioned during oral argument [on the motions] that it was considering sanctions," and (3) the court's "first mention" of sanctions was in its ruling denying the motions. We are not persuaded that the trial court violated Gaims's due process rights.

■ The due process issue is not dependent upon when the trial court "first mentioned" sanctions. The issue is whether—prior to the court's final ruling—Gaims had notice that the court was considering the matter of sanctions, and whether the firm was afforded an opportunity to be heard on the issue. (*California Back Specialists Medical Group v. Rand* (2008) 160 Cal.App.4th 1032, 1038 [73 Cal.Rptr.3d 268].) In this regard, we find *Brewster v. Southern Pacific Transportation Co.* (1991) 235 Cal.App.3d 701 [1 Cal.Rptr.2d 89] to be applicable. There, the trial court stated its intent to award sanctions at a hearing held in October. The party in whose favor the sanctions award was subsequently made submitted a statement of its attorneys' fees in November. At a hearing one week later, the party against whom the court was contemplating sanctions was given an opportunity to challenge the adequacy of the notice and to present substantive objections to a sanctions award. (*Brewster, supra*, at p. 716.) The trial court imposed sanctions, and the Court of Appeal affirmed.

In the current case, the trial court indicated its intention to impose sanctions in the order issued on September 22, 2009. The court did not fix the amount of attorneys' fees until it issued its order December 15, 2009. In the intervening three-month period, the court afforded the parties an extensive opportunity to submit materials concerning the issue of attorneys' fees. We see no due process error.

Finally, we decline to address Gaims's argument that the amount of fees and costs was an abuse of discretion. Because the trial court must revisit the proper amount of fees, limited to Gerbosi, it is premature at this point to consider whether any part of the jointly awarded figure of roughly $220,000 is excessive. Once the court fixes the amount of fees recoverable by Gerbosi alone, Gaims may raise whatever challenges, if any, it considers arguable.

## DISPOSITION

The trial court's order of September 22, 2009, denying in full Gaims's anti-SLAPP motion to strike Gerbosi's complaint is affirmed. The trial court's order denying Gaims's anti-SLAPP motion to strike Finn's complaint is affirmed in part and reversed in part as explained in this opinion. The court's order dated December 15, 2009, fixing attorneys' fees jointly in favor of

Gerbosi and Finn in the amount of $220,730, is reversed, and the cause is remanded to the trial court with directions to enter an order awarding attorneys' fees in favor of Gerbosi only. The parties are to bear their own costs on appeal.

Flier, J., and Grimes, J., concurred.