Filed 8/8/25  Williams v. House CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| VIRGINIA WILLIAMS, Plaintiff and Appellant, v. NETTIE FAYE HOUSE et al., Defendants and Respondents. | D084685 (Super. Ct. No. 37-2021-00038773-CU-FR-CTL) |


APPEAL from an order of the Superior Court of San Diego County, Loren G. Freestone, Judge.  Affirmed.

Virginia Williams, in pro. per., for Plaintiff and Appellant.

Nettie Faye House and Natiha House, in pro. per., for Defendants and Respondents.


Virginia Williams appeals the order awarding Nettie Faye House and Natiha House attorney fees and costs incurred in connection with their partially successful special motion to strike Williams's second amended complaint as a strategic lawsuit against public participation (SLAPP). Williams contends the trial court erred by finding the Houses prevailed on

the motion and by awarding an unreasonable amount of fees.  We reject these contentions and affirm the order.

## I.

## BACKGROUND

A.    *Complaint*

In a second amended complaint, Williams asserted counts for fraud, defamation, and "money damages" against the Houses and four others who were later dismissed.  Williams alleged her sister, Nettie Faye House, and her niece, Natiha House, made false accusations that Williams defrauded and abused her elderly parents to Bank of America, Adult Protective Services (APS), police, the fire department, family members, friends, and church members.  Williams also alleged the Houses made similar false accusations in separate court proceedings for a restraining order.  She prayed for compensatory and punitive damages for reputational harm and emotional distress allegedly caused by the false accusations the Houses made with malice, oppression, and fraud.

B.    *Anti-SLAPP Motion*

The Houses filed a special motion to strike the second amended complaint under the anti-SLAPP statute (Code Civ. Proc., § 425.16).  They contended the fraud count was alleged only against the defendants who had been dismissed, there was no cause of action for "money damages," and the only count at issue was the one for defamation.  The Houses argued the defamation count was a SLAPP that should be stricken for two reasons. First, the count arose from activities protected by the anti-SLAPP statute, namely, communications made in anticipation of official investigations of potential elder abuse or made in judicial proceedings.  (*Id.*, subds. (b)(1), (e).) Second, Williams could not prevail on the defamation count because the

2

communications were privileged (Civ. Code, § 47, subd. (b)); Nettie, as a licensed nurse who provided healthcare services to her parents, was a mandated reporter immune from liability for reporting suspected elder abuse (Welf. & Inst. Code, § 15634, subd. (a)); and Natiha made none of the statements alleged against her. (Code Civ. Proc., § 425.16, subd. (b)(1).) The Houses asked the trial court to exercise its discretion to allow Nettie to make the motion even though more than 60 days had passed since she was served with the second amended complaint. (*Id.*, subd. (f).) In support of the motion, Nettie submitted a declaration stating she was a licensed nurse and provided professional services to her parents, reported suspected elder abuse of her parents to APS, contacted her mother's doctor's office to investigate suspected elder abuse, asked police to conduct welfare checks of her parents, and commenced a court proceeding for a restraining order against Williams after receipt of a threatening message from her. Natiha submitted a declaration stating she made none of the statements Williams alleged and did not know why she had been sued.

Williams opposed the anti-SLAPP motion. She argued it was untimely as to Nettie, the defamatory statements the Houses made were not speech or petitioning activity protected by the anti-SLAPP statute, the mandated reporter immunity did not apply, and she needed discovery to support her defamation claim. The opposition papers included declarations from Williams, her father, and two of her siblings. Williams stated she never abused her parents, but Nettie repeatedly made false accusations of such abuse to Bank of America, Home Title Lock, her mother's physician, family members, friends, church members, and providers of police, fire, and ambulance services. The other declarants corroborated Williams's statements that she never abused her parents and that Nettie had sent

3

emergency services providers to her parents' home multiple times. Williams also submitted objections to portions of the Houses' declarations.

According to the trial court's register of actions, the Houses filed a reply and objections to the evidence Williams submitted with her opposition papers. Neither document is included in the record, however.

The trial court held a hearing and issued an order granting the anti-SLAPP motion in part and denying it in part. The court did not rule on the parties' evidentiary objections. It chose to exercise its discretion to consider the motion even though Nettie filed it more than 60 days after she had been served with the second amended complaint. The court rejected Williams's argument she needed discovery to oppose the motion. It granted the motion as to the defamatory statements allegedly made to APS, Bank of America, Williams's mother's physician, and police, and statements made in the separate court proceeding to obtain a restraining order, and ordered allegations concerning those statements stricken from the second amended complaint. The court agreed with the Houses those communications were protected by the anti-SLAPP statute and were subject to privilege or immunity. The court denied the motion as to the defamatory statements allegedly made to Williams's family members, friends, and church members, which it ruled were not protected by the anti-SLAPP statute.

C.    *Motion for Attorney Fees and Costs*

The Houses filed a separate motion for an award of $19,565.33 in attorney fees and costs after the trial court ruled on the anti-SLAPP motion. (Code Civ. Proc., § 425.16, subd. (c)(1).) They argued an award of fees and costs was mandatory because they succeeded in eliminating from the second amended complaint nearly all the allegations against them, and the amount they sought was reasonable and necessary. The Houses' attorney submitted

4

a declaration in which he described his education and experience; stated he charged an hourly billing rate ($300) lower than that charged by other San Diego attorneys ($400 to $600) so that he could assist clients of modest means; and included a table of the tasks performed, the time spent on each task, and the filing fees and other costs for the anti-SLAPP motion and the motion for attorney fees and costs.

Williams opposed the motion for attorney fees and costs. She argued the Houses did not prevail on the anti-SLAPP motion because they sought to strike the entire second amended complaint but were "unsuccessful, with only 'minimal stricken claims' from [the pleading]." Williams complained the amount of fees requested was "excessive and unreasonable." She argued the anti-SLAPP motion was "not particularly complex or intricate, given that [her] complaint [was] only 10 pages short and consisted of three causes of action, with defamation being the sole remaining claim," and the Houses' "seasoned attorney" should have been able "to get more done [in] less time." She cited general legal principles regarding the reasonableness of attorney fees but did not challenge any particular portion of the fees. The only evidence Williams submitted was her own declaration, in which she stated that the Houses did not prevail on the anti-SLAPP motion and that the requested attorney fees were "unconscionable and unreasonable and made [her] cry."

The trial court's register of actions includes an entry for the Houses' reply to Williams' opposition, but the reply is not included in the record.

The trial court held a hearing and issued an order on the motion for attorney fees and costs. It ruled the Houses were prevailing parties entitled to fees and costs because the anti-SLAPP motion "significantly narrow[ed] the scope of this case." "Based on the evidence presented, and its own

5

familiarity with issues raised by the motion and hourly rates in the San Diego legal market, the court [found] the time spent and requested hourly rates to both be reasonable." Because "the motion was not entirely successful and [the Houses were] still left to defend a piece of the case," however, the court found it "appropriate" to award less than the full amount requested. The court identified in the second amended complaint six categories of entities to which the Houses allegedly made defamatory statements about Williams, noted it had stricken the allegation as to five of those categories, and awarded the Houses five-sixths of the requested fees and costs, i.e., $16,304.44.

## II.

## DISCUSSION

### A.     *Williams's Claims of Error*

Williams attacks the order awarding the Houses attorney fees and costs on multiple grounds. She contends the Houses were not prevailing parties entitled to fees and costs because their anti-SLAPP motion failed to eliminate the count for defamation; succeeded in striking only "limited," "nominal," and "inconsequential" portions of the second amended complaint; and provided no "practical benefit" to the Houses. Williams further contends the amount of fees and costs awarded was unreasonable given the lack of complexity of the case. She suggests the Houses should recover no attorney fees because their attorney has withdrawn from the action. Williams asks us to reverse the order awarding fees and costs and to direct the trial court to find there was no prevailing party for purposes of fees and costs.

Williams also attacks on multiple grounds the order partially granting the anti-SLAPP motion. She faults the trial court for failing to consider "the serial and vexatious nature of [the Houses'] conduct" in filing numerous

6

baseless restraining order proceedings and making repeated unfounded reports of wrongdoing to APS, conduct Williams argues is not protected by the anti-SLAPP statute. She argues the statements the Houses made to their mother's physician and to Bank of America were not protected petitioning activity within the scope of the anti-SLAPP statute. Williams also argues the trial court erroneously ruled the mandated reporter immunity applied to Nettie's statements. She complains the anti-SLAPP motion was untimely as to Nettie. Williams asks us to reverse the order partially granting the anti-SLAPP motion.

B.      *Appealability and Scope of Appeal*

An order awarding attorney fees and costs to defendants who partially prevailed on an anti-SLAPP motion is appealable as a final order on a collateral matter that directs the payment of money. (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368; *City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 781–782.) The order awarding the Houses fees and costs is the only order Williams listed in her notice of appeal. Although the prior order partially granting the Houses' anti-SLAPP motion was immediately appealable (Code Civ. Proc., §§ 425.16, subd. (i), 904.1, subd. (a)(13); *Old Republic Construction Program Group v. The Boccardo Law Firm, Inc.* (2014) 230 Cal.App.4th 859, 866, fn. 4), Williams did not appeal that order. " 'Our jurisdiction on appeal is limited in scope to the notice of appeal and the judgment or order appealed from.' [Citation.] We have no jurisdiction over an order not mentioned in the notice of appeal." (*Faunce v. Cote* (2013) 222 Cal.App.4th 166, 170.) The scope of this appeal is limited to the order awarding attorney fees and costs; we cannot consider any challenges to the order on the anti-SLAPP motion.

7

C.      *Standard of Review*

We review a trial court's order awarding attorney fees and costs under the anti-SLAPP statute for abuse of discretion.  (*Marshall v. Webster* (2020) 54 Cal.App.5th 275, 285 (*Marshall*); *569 E. County Boulevard LLC v. Backcountry Against the Dump, Inc.* (2016) 6 Cal.App.5th 426, 433.)  An abuse occurs if the court uses the wrong legal standard or awards an amount so high under the circumstances that it shocks the conscience.  (*Marshall*, at p. 285; *569 E. County Boulevard LLC*, at p. 434.)  The party challenging the award must establish an abuse of discretion.  (*Marshall*, at p. 288.)

D.      *Prevailing Party Determination*

Williams contends the trial court should have denied the Houses any attorney fees and costs because they did not prevail on the anti-SLAPP motion.  In ruling on that motion, she says, the trial court did not "eliminate liability for the defamation claims at issue to any effective or substantial extent" and only struck portions of the second amended complaint that were "inconsequential" to her case.  We disagree.

With exceptions not applicable to this case, the anti-SLAPP statute provides that "a prevailing defendant on a special motion to strike *shall* be entitled to recover that defendant's attorney's fees and costs."  (Code Civ. Proc., § 425.16, subd. (c)(1), italics added.)  "The language of the anti-SLAPP statute is mandatory; it requires a fee award to a defendant who brings a successful motion to strike."  (*Cabral v. Martins* (2009) 177 Cal.App.4th 471, 490.)  Recoverable fees include those incurred in litigating the anti-SLAPP motion and those incurred in litigating the motion for fees.  (*Frym v. 601 Main Street LLC* (2022) 82 Cal.App.5th 613, 622 (*Frym*).)  "[A] party who partially prevails on an anti-SLAPP motion must generally be considered a prevailing party unless the results of the motion were so insignificant that

8

the party did not achieve any practical benefit from bringing the motion." (*Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328, 340 (*Mann*).) The prevailing party determination lies within the trial court's broad discretion, and we review its determination for abuse of discretion. (*Ibid.*) "A ruling amounts to an abuse of discretion when it exceeds the bounds of reason, and the burden is on the party complaining to establish that discretion was abused." (*Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, 450 (*Gerbosi*).)

The trial court did not abuse its discretion in determining the Houses prevailed on the anti-SLAPP motion. After the court ruled on the motion, only the defamatory statements the Houses allegedly made to Williams's family members, friends, and church members remained at issue. The court struck the defamatory statements the Houses allegedly made to Bank of America, APS, Williams's mother's physician, police, and other emergency service providers, and statements made in the separate court proceeding to obtain a restraining order against Williams. The elimination of all those statements "had the potential to narrow the litigation with respect to the damages issues and the focus of the claimed false statements." (*Mann, supra*, 139 Cal.App.4th at p. 340.) The trial court's ruling the stricken statements were privileged or Nettie had immunity from civil liability for making them precluded Williams from later pursuing any recovery based on the statements. (*Ibid.*) Since the Houses' anti-SLAPP motion "narrowed the scope of the lawsuit, limit[ed] discovery, reduc[ed] potential recoverable damages, and alter[ed] the settlement posture of the case" (*ibid.*), the trial court did not "exceed[ ] the bounds of reason" in deciding the Houses prevailed on the motion (*Gerbosi, supra*, 193 Cal.App.4th at p. 450).

9

E.    *Amount of Award*

Williams attacks the amount of attorney fees the trial court awarded the Houses.  She contends the amount was excessive for a "case involv[ing] straightforward defamation claims" for which preparation of an anti-SLAPP motion should have been "relatively simple" for an attorney as experienced as the Houses' attorney.  Williams complains the attorney spent too much time doing "relatively simple tasks" and "basic procedural work," and the fee award should be reduced to account for "inefficiencies, duplicative efforts, and excessive billing."  She complains the court failed to conduct "a careful and reasoned assessment" of the hours billed in light of the lateness of the filing of the anti-SLAPP motion, its "minimal value" and "nominal results," the "simplicity" of the case, and the attorney's "significant inefficiencies."  Williams alleges the Houses' attorney withdrew before he received payment, and "his withdrawal raises significant concerns about the legitimacy of [the] fees" and "suggests that the [anti-SLAPP] motion was used as a vehicle for a money grab."  None of this establishes an abuse of discretion.

To set the attorney fees award, the trial court used the lodestar method, which our Supreme Court has held "should be applied to fee awards under Code of Civil Procedure section 425.16." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1136 (*Ketchum*).)  "Under the lodestar method, the trial court 'tabulates the attorney fee touchstone, or lodestar, by multiplying the number of hours reasonably expended by the reasonable hourly rate prevailing in the community for similar work.' " (*Frym, supra*, 82 Cal.App.5th at p. 621.)  The lodestar may be adjusted up or down to fix the fee at the fair market value of the services based on such factors as the novelty and complexity of the issues, the attorney's experience and expertise, the degree of success in the litigation, and any padding for unnecessary or

10

duplicative work.  (*Ketchum*, at p. 1132; *Mann, supra*, 139 Cal.App.4th at p. 342; *Wilkerson v Sullivan* (2002) 99 Cal.App.4th 443, 448 (*Wilkerson*).) "The ' "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." ' "  (*Ketchum*, at p. 1132.)

We see in the record no basis to disturb the trial court's attorney fees award.  As to the reasonableness of the hourly rate ($300), the Houses' attorney stated in a declaration the rate he charged was below the San Diego market rate.  Based on its familiarity with hourly rates in the local legal market, the trial court found the rate was reasonable.  A court may rely on an attorney's declaration about market rates and its own knowledge of the market to determine the reasonable hourly rate to be used to calculate the lodestar.  (*Nishiki v. Danko Meredith, APC* (2018) 25 Cal.App.5th 883, 898; *Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 702.)  As to the reasonableness of the number of hours billed (63.15), the Houses' attorney included in his declaration a table of the tasks performed and the time spent on each task.  In finding the number of hours billed was reasonable, the trial court noted the Houses' attorney had more than 10 years of experience and stated:  "[T]he complaint is not easy to follow.  [The attorney] needed to decipher the complaint to identify the various types of statements upon which the defamation claim was based, research and brief whether each of those statements [was] protected for purposes of the [anti-]SLAPP statute, and then demonstrate that there was no merit to the claim to the extent based on each of those statements.  The order on the [anti-]SLAPP motion required six single-spaced pages to fully address the issues."  The court nevertheless awarded only five-sixths of the total amount

11

requested because the anti-SLAPP motion did not eliminate the Houses' liability for defamation to the extent it was based on accusations of elder abuse they allegedly made to Williams's family members, friends, and church members. The record shows that after considering the difficulty of the issues involved in the anti-SLAPP motion, the experience of the Houses' attorney, the necessity of the work for which he billed, and the lack of total success on the motion, the trial court acted within its discretion by awarding five-sixths of the amount of fees requested. (See *Mann, supra*, 139 Cal.App.4th at p. 342; *Wilkerson, supra*, 99 Cal.App.4th at p. 448.)

Williams's arguments do not persuade us to reach the opposite conclusion and to reduce the award of attorney fees to zero. She asserts the Houses' attorney charged a "high hourly rate of $300" and goes through the table of tasks he submitted to claim the trial court did not properly reduce the lodestar for "duplicative" work and hours that were "glaringly inflated." "General arguments that fees claimed are excessive, duplicative, or unrelated do not suffice." (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564.) The Houses submitted with their motion for attorney fees a declaration from their attorney substantiating the requested fees. Williams "had two options to oppose such a showing: attack the itemized billings with evidence that the fees claimed were not appropriate, or obtain the declaration of an attorney with expertise in the procedural and substantive law to demonstrate that the fees claimed were unreasonable. [She] did neither." (*Id.* at pp. 563–564.) Her argument to the trial court and conclusory statement in her declaration that the amount of attorney fees requested was unreasonable do not "warrant overturning the trial court's exercise of discretion." (*Id.* at p. 564; see *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.*

12

(2003) 106 Cal.App.4th 1219, 1248 ["cursory argument" that fees were unreasonable provided "no basis to disturb the trial court's discretionary ruling on the attorney fees motion"].)

We also reject Williams's claims that no attorney fees should be awarded because the anti-SLAPP motion was untimely as to Nettie and the Houses' attorney's withdrawal before being paid "undermin[es] the fairness and legitimacy of the fee award." Williams cites nothing in the record to substantiate her assertions the attorney withdrew or has not been paid. "[W]e may disregard factual contentions that are not supported by citations to the record [citation] or are based on information that is outside the record [citation]." (*Tanguilig v. Valdez* (2019) 36 Cal.App.5th 514, 520.) Williams's contention the trial court should have denied the anti-SLAPP motion because Nettie's filing was untimely is an attack on the order on that motion, which is beyond the scope of this appeal. (See pt. II.B., *ante*.) Williams offers no explanation and cites no authority as to why the court, after it decided to allow the late filing and granted the motion in part, should not award the attorney fees Nettie incurred in connection with the motion simply because it was filed late. Nor does she explain why the attorney's withdrawal "raises significant concerns about the legitimacy of [his] fees" or cite any legal authority in support of her concerns. "The absence of reasoned legal argument supported by citation to authority allows this court to treat the[se] contention[s] as forfeited." (*Siskiyou Hospital, Inc. v. County of Siskiyou* (2025) 109 Cal.App.5th 14, 39.)

In summary, we conclude Williams has not shown the trial court's award of attorney fees to the Houses was " ' "clearly wrong" ' " (*Ketchum, supra*, 24 Cal.4th at p. 1132), " 'shocks the conscience' " (*Marshall, supra*, 54 Cal.App.5th at p. 285), or "exceeds the bounds of reason" (*Gerbosi, supra*,

13

193 Cal.App.4th at p. 450).  The trial court was in the best position to assess the reasonableness of the hourly rate and the number of hours billed. (*Ketchum*, at p. 1132; *Marshall*, at p. 285.)  Williams has not met her burden to show the court's assessment constituted an abuse of discretion that requires reversal of the award.  (*Marshall* at p. 288; *Gerbosi*, at p. 450.)

## III.

## DISPOSITION

The order awarding respondents attorney fees and costs is affirmed. Respondents are entitled to their costs on appeal.


IRION, Acting P. J.

WE CONCUR:


DATO, J.


DO, J.

14