Filed 11/14/14  Knittel v. Elysian Care Corp. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| RONALD DENNIS KNITTEL et al., | B248369 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. EC058982) |
| v. | |
| ELYSIAN CARE CORPORATION et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles, William D. Stewart, Judge.  Affirmed.

Creim Macias Koenig & Frey, Richard C. Macias, Kim R. Gundlach for Defendants and Appellants Elysian Care Corporation, Cvia Bouskill and Robert Bouskill.

Robie & Matthai, Edith R. Matthai, Natalie A. Kouyoumdjian, Christy Gargalis for Defendants and Appellants Jerald E. Gale, Robert E. Lewis and Ablon, Lewis, Bass & Gale.

The Dressler Law Group and Thomas W. Dressler for Plaintiffs and Respondents.

_____

Robert and Cvia Bouskill agreed to make three substantial payments to Edna and Dennis Knittel to settle disputes about the ownership and obligations of Elysian Care Corporation.[1]  The Bouskills' attorneys represented to the Knittels that the Bouskills had made the second payment under the settlement agreement, which the attorneys were holding in trust for the Knittels pending receipt of certain documents as provided for in the agreement.  The Knittels and the Bouskills executed a mutual release in connection with an unrelated wrongful death action.  The Bouskills and their attorneys refused to provide the second or third payments under the settlement agreement, claiming the release superseded the Bouskills' obligations.  The Knittels filed this action against the Bouskills and their attorneys for a declaration of rights, reformation or rescission of the release based on fraud or mistake, fraud, and breach of trust.  The attorneys filed a special motion to strike the cause of action for fraud under Code of Civil Procedure section 425.16, the anti-SLAPP statute,[2] which the trial court denied.  On appeal, the attorneys contend representations to the Knittels prior to execution of the release were acts in furtherance of the right of petition.  We conclude their representations about the Bouskills' performance of an executed settlement agreement were not a protected activity under the anti-SLAPP statute.

The Bouskills and Elysian also filed an anti-SLAPP motion.  The trial court found the motion addressed only the fraud causes of action and denied it on the same ground. We agree that the Bouskills and Elysian failed to show the causes of action were based on a protected activity under the anti-SLAPP statute.  The order denying the anti-SLAPP motions must be affirmed.

---

[1] Several parties share the same last name.  They will be referred to individually by their first names for ease of reference.

[2] SLAPP is an acronym for strategic lawsuit against public participation.  All further statutory references are to the Code of Civil Procedure, unless otherwise stated.

## FACTS AND PROCEDURAL BACKGROUND

**Undisputed Facts**

Edna and Cvia were shareholders of Elysian, which operates the skilled care facility Lawndale Care Center. Edna's father Rizalito Fabonan was a resident at Lawndale. The facility is located on property owned by Lawndale Healthcare Enterprises, LLC, which the Knittels and the Bouskills owned equally.

In March 2007, Cvia and other plaintiffs obtained a judgment ordering Edna and her family members to relinquish control of Elysian. Dennis filed an action to enforce a promissory note made by the LLC. Edna filed an action for involuntary dissolution of Elysian. Cvia petitioned to avoid dissolution by purchasing Edna's interest in Elysian. The Knittels were represented in these proceedings by attorney Thomas Dressler of The Dressler Law Group, LLP. The Bouskills were represented by attorney Jerald Gale and his firm Ablon, Lewis, Bass & Gale, LLP.

Edna's father was transferred to another facility, where he died. On April 2, 2008, his wife Rosalinda Fabonan, individually and as executrix of her husband's estate, and her children Edna, Ethel Gibson, Nimfa Fadrilan, Consuelo Fabonan, Cheddy Fabonan, Rosalie Mesa, Dinah Fabonan, Michael Fabonan, and Larsie Fabonan (collectively the wrongful death plaintiffs), filed a wrongful death action against several defendants, including Elysian and the Bouskills. The wrongful death plaintiffs were represented by attorney David G. Derrickson of The Law Offices of David G. Derrickson. The Bouskills and Elysian were represented by attorney Thomas Swann of the law firm Giovanniello & Michels, LLP, but attorney Gale associated in as co-counsel on behalf of Cvia.

The Knittels and the Bouskills settled the lawsuits over corporate obligations effective September 5, 2008. The 2008 settlement agreement provided for the Bouskills to make three payments to the Knittels: (1) $500,000 payable to Dressler's client trust fund upon execution of the settlement; (2) $200,000 on September 7, 2009; and (3)

$200,000 on September 6, 2010. The Knittels acknowledged three tax obligations: (1) a June 1999 judgment against Dennis in favor of the Los Angeles County Tax Collector in the amount of $1,040; (2) a notice of state tax lien dated May 18, 2007, with an assessment of $72,602.07; and (3) a notice of federal tax lien dated February 26, 2008 with an assessment of $231,025.41. The Knittels agreed to obtain a full release of each tax lien from the applicable tax authorities and full satisfaction of the judgment in favor of the Los Angeles County Tax Collector prior to receiving any money from the payment to Dressler's client trust fund. If the Knittels had not delivered the releases and full satisfaction of judgment to the Bouskills' attorneys when the second and third payments were due, the settlement provided that "in such event, the moneys due therein shall be paid to Ablon, Lewis, Bass & Gale LLP Trust Account, to be held in trust for the benefit of the Knittels until receipt of the release of such tax liens." The Knittels and the Bouskills agreed to a mutual general release of claims, with the exception of the claims pending in the wrongful death action. The agreement required mediation and arbitration of disputes arising from the settlement. The Bouskills made the first payment due under the agreement.

In April 2009, Elysian and the Bouskills served all of the wrongful death plaintiffs with offers to compromise under section 998. Specifically, they offered to settle the causes of action for elder abuse, negligence, professional negligence and violation of resident's rights for a waiver of costs in exchange for a dismissal with prejudice. On May 7, 2009, attorney Derrickson filed an acceptance of the 998 offers on behalf of all the wrongful death plaintiffs except Mesa, who was in pro per.

On May 8, 2009, Derrickson wrote attorney Swann that Mesa was willing to substitute Derrickson as her attorney of record for purposes of settlement. He added, "Lastly, by our conversation of this day, I understand your intent to be that we will cease hostilities and cancel depositions; and that we will mutually waive costs, fees and related claims. Included in such related claims is malicious prosecution and/or abuse of process. You pointed out that you are without authority to waive 'unrelated' claims, i.e., claims

4

not arising out of the facts which gave rise to the present litigation." He asked attorney Swann to correct any misstatement.

Swann responded that the 998 offers contained the settlement terms, which the wrongful death plaintiffs had accepted. "Your attempts to modify these terms in later correspondence are expressly rejected." "Pursuant to your request, we will shortly forward a General Release for your review, and your clients' execution. This release is being provided at your request only and will not vary the terms of Plaintiffs' acceptance of Defendants' Code of Civil Procedure § 998 Offers to Compromise. [¶] Should you not wish to proceed with the release, then we will enter judgment per the terms of the above acceptances."

Derrickson responded on May 27, 2009, "You extended offers under CCP 998. We accepted whereby we intended to bring this case to closure and preclude further suits based on abuse of process and malicious prosecution arising out of this case. [¶] If this is inconsistent with your intent, kindly so advise. [¶] Your present correspondence is an offer under 998 with respect to only Rosalinda Fabonan dedicated to [two claims] . . . . [¶] Do you seek settlement as to all causes of action and as to all plaintiffs? [¶] Please advise."

Attorney Swann replied that the wrongful death plaintiffs had accepted 998 offers which expressly stated their terms. He considered the matter resolved, and it was only pursuant to Derrickson's request that he was forwarding a general release. "Should Plaintiffs desire not to proceed with the release, then we will request that the Court enter judgment per the terms of the accepted 998 Offers to Compromise."

Swann and Derrickson exchanged drafts of a release. The final version of the release states that the wrongful death plaintiffs accepted 998 offers to compromise and would dismiss the wrongful death action with prejudice in consideration for a waiver of costs. It continued: "2. As additional consideration, the parties shall release and discharge each other of and from any and all [] claims, demands, choses in action, liabilities and/or causes of action which any of them may now have, claim to have, or previously had, all as is more fully set forth hereinbelow[.] [¶] 3. The parties and their

5

spouses, each of whom has signed this agreement, on behalf of themselves, . . . hereby remiss, fully release, and forever discharge each other, as well as their agents, . . . of and from any and all claims, actions, demands, causes of action, obligations, contracts, covenants, liabilities, choses in action, and/or damages of any kind, name, nature or description, whether at law or in equity, whether known or unknown, suspected, claimed or alleged, including any claims for malicious prosecution or abuse of process which any party may have or claim to have against any other party or that party's attorney, as well as all claims which were or which could have been alleged in any pleadings filed in any action either previously or heretofore filed, including any and all claims either asserted or which could have been asserted in any action, proceeding, including the Action against the Defendants, or by the Defendants against Plaintiffs, in any pleadings, briefs, records or other papers concerning the Action or any other action or proceeding, which may be based upon, arise from, be related to, or connected with any of the mattered referred to in any of such pleadings, records or other papers; including, without limitation, any and all actions, demands, causes of action, obligations, liabilities and damages arising out of or in any way connected with any act or omission attributable to the Defendants by the Plaintiffs, or to the Plaintiffs by the Defendants, from the beginning of time to the date the Plaintiff executes this Release, regardless of how such claim, demand, obligation, liability or damage may arise, whether by tort, contract, statutory violation or otherwise, and whether arising in law or in equity. The spouses of the Plaintiffs signing this Agreement agree that such releases shall be binding upon and effective as to them as well, and that such releases of all claims, demands, contracts, causes of action, and/or damages whether known or unknown, suspected, claimed or alleged, shall redound to their benefit and shall be binding upon them, including any claims based on any community property right, right of inheritance or succession, or any other rights whether at law or in equity." The release required the signatures of all parties and their spouses.

The Bouskills and Elysian executed the release on August 3, 2009, but attorney Gale did not deliver the signatures. On August 4, 2009, attorney Dressler wrote Gale a reminder that the Bouskills' second payment under the 2008 settlement was due on

September 7, 2009.  Dressler sent a second reminder about the payment to Gale on August 27, 2009, noting certain documents were also required from the Bouskills.   On August 28, 2009, attorney Robert Lewis of the Ablon firm responded to attorney Dressler that the documents had been sent.  He added, "I haven't had a moment to review the Settlement Agreement to ensure that your clients are in compliance with all provisions of that agreement.  I will do that early next week when I receive the current policy from the brokers and will advise you if I see any open issues at the time I send you that policy." He copied Robert on the letter.

Attorney Derrickson wrote to Gale on August 28, 2009.  He had learned the Knittels had a separate pending action or claim against the Bouskills and they would require time "to obtain their own legal counsel with respect to settling only those claims appurtenant to the [FABONAN] Case and no others.  This of necessity will cause a delay in obtaining their final approval of the operant Release."

On September 4, 2009, Lewis sent a copy of an insurance policy to attorney Dressler as required under the 2008 settlement.  He added, "Our firm is holding in its attorney trust account the sum of $200,000.00 pursuant to the terms of the Settlement Agreement, pending compliance therewith and resolution of any and all disagreements and disputes in accordance therewith."  He copied Robert and Gale on the letter.

The Knittels executed the release on September 10, 2009.  Gale delivered the Bouskills' signatures on the release to Derrickson.  On December 2, 2009, the Knittels obtained the tax lien releases, provided copies to Lewis, and demanded payment of the money Ablon held in trust.  On January 6, 2010, attorney Gale wrote to the Knittels' new attorney Victor Meyen that the release excused the Bouskills from further performance under the 2008 settlement.  The Bouskills did not make either of the final payments required under the 2008 settlement to the Knittels.

Edna filed a motion to set aside the dismissal in the wrongful death action, which the trial court denied because the issues were before an arbitrator.  The record on appeal does not contain any further information about the arbitration.

7

## Complaint

On September 7, 2012, the Knittels filed the instant complaint against Gale, Lewis and Ablon (collectively the attorneys), Elysian and the Bouskills, and the wrongful death plaintiffs. The Knittels sought a declaration of rights as to Elysian and the Bouskills, rescission or reformation of the release based on fraud or mistake as against all defendants except the attorneys, and fraud and breach of trust against the Bouskills and the attorneys. In addition to the undisputed facts above, the complaint alleged as follows. Attorney Lewis orally told attorney Dressler that the Knittels needed to provide tax lien releases required by the 2008 settlement. He said the Bouskills' payment would be held in Ablon's client trust account until the releases were obtained. The Bouskills, through their counsel, assured the Knittels orally and in writing that the settlement payment would be paid promptly upon release of the tax liens and the funds necessary to make the payment due had been set aside.

The Knittels sought a declaration that the release had no effect on the 2008 settlement. Alternatively, the release should be reformed or rescinded based on mutual mistake, because the parties did not intend the release to affect claims unrelated to the wrongful death action. Or, the release should be reformed or rescinded based on unilateral mistake, because the defendants knew or suspected that the Knittels did not intend to release claims unrelated to the wrongful death action.

In the causes of action for rescission or reformation based on fraud, the Knittels alleged attorney Lewis's representations were false. The Bouskills and Elysian knew the representations were false and intended the Knittels to rely on the representations to their detriment. The Bouskills and Elysian had a duty to disclose their contention the release would waive claims under the 2008 settlement, because the disclosure materially qualified the express statements and was necessary to prevent the express statements from being misleading. Because the Knittels' consent was procured by fraud, the release is subject to rescission or reformation to make clear that the Knittels' rights under the 2008 settlement are not affected by the release.

8

In the fraud cause of action, the Knittels similarly alleged the Bouskills, Elysian, and the attorneys knew Lewis's statements were false. They intended the Knittels to rely on the representations to their detriment. The Bouskills, Elysian and the attorneys had a duty to disclose their contention that the release waived claims under the 2008 settlement, because it materially qualified the express statements made and was required to make the express statements not misleading. The Knittels reasonably relied on the representations to their detriment by executing the release. The Knittels would not have executed the release if they had known the truth.

## Anti-SLAPP Motions and Supporting Evidence

The attorneys filed an anti-SLAPP motion to strike the cause of action against them for fraud. They argued the claim arose from the exercise of a constitutional right of petition and the Knittels could not establish a probability of success. In addition, they argued the litigation privilege and the statute of limitations barred the Knittels' action.

Attorney Gale declared counsel in the wrongful death action had discussed the Bouskills' intent to proceed with claims for malicious prosecution and abuse of process, or pursue claims against members of the Fabonan family related to misappropriation of Elysian's assets. Derrickson was concerned acceptance of the 998 offers would leave the wrongful death plaintiffs open to further litigation. Although the release was drafted in July 2009, it was not clear whether the wrongful death plaintiffs were going to sign it. He contacted Derrickson by telephone to determine whether the wrongful death plaintiffs were going to sign the release. He received Derrickson's letter that the Knittels needed time to obtain separate counsel. He received a telephone call in September 2009 from Victor Meyen, who purported to represent the Knittels. Gale refused to provide any information to Meyen without confirmation that Meyen was acting on behalf of the Knittels. Without any further communication, Gale received the Knittels' signatures on the release from Derrickson. At that point, the Bouskills authorized him to deliver their signatures.

9

The attorneys submitted Derrickson's declaration from another pleading. Derrickson declared he telephoned attorney Dressler's office. He was informed Dressler was out of the office, the prior case involving the Knittels had resolved, the case was closed, payment had been made, the law office had been paid, the Dressler firm no longer represented the Knittels and nothing further needed to be done concerning that matter. Derrickson did not intend to dismiss Edna's rights against the Bouskills as provided in the 2008 settlement. He was not authorized to negotiate on behalf of Edna with respect to the previous case. None of the Bouskills' attorneys mentioned the Bouskills had any obligations arising out of the prior matter.

Elysian and the Bouskills filed an anti-SLAPP motion to strike all of the causes of action except breach of trust. They argued all of these causes of action arose from negotiations to settle litigation and were protected petitioning activity under section 425.16. Their argument was based solely on Lewis's representations to the Knittels. They submitted evidence supporting the facts above.

**Opposition to the Anti-SLAPP Motions and Supporting Evidence**

The Knittels filed an opposition to the attorneys' motion to strike. They argued the anti-SLAPP statute did not apply to performance of the 2008 settlement agreement. They also argued they had established a prima facie cause of action for fraud, because Lewis plainly stated he was holding funds in trust for the Knittels. They argued the litigation privilege did not apply and the complaint was timely.

The Knittels opposed the motion to strike filed by Elysian and the Bouskills on the same grounds. In addition, they argued the motion by Elysian and the Bouskills focused on the fraud claims without addressing mutual and unilateral mistake. They argued that the litigation privilege applied only to tort claims.

Dennis filed a declaration in support of the Knittels' opposition. He declared that he believed and understood that nothing in the release would affect the parties' obligations under the 2008 settlement agreement. He believed the assurances from Lewis

10

and Ablon, on behalf of Elysian and the Bouskills, that the 2008 settlement would be honored. Their requests to cure a minor default, made after the release had been finalized and the Bouskills had executed it, confirmed the understanding of the parties. Gale, Lewis and Ablon, and through them the Bouskills, told him $200,000 had been set aside in trust for the benefit of the Knittels and the only obstacle to payment was a release of tax liens specified in the 2008 settlement. Dennis and his wife executed the release in reliance on the statements of Gale, Lewis, Ablon and the Bouskills that payment would be made from the trust funds set aside for the Knittels' benefit once tax lien releases were obtained.

**Replies and Trial Court Ruling**

Elysian and the Bouskills filed a reply arguing that all of the Knittels' claims were premised on fraud, the Bouskills' counsel did not owe a duty to the Knittels, and the Knittels could not establish justifiable reliance. The attorneys filed a reply as well.

A hearing was held on March 15, 2013. The trial court noted Elysian and the Bouskills had failed to proceed through each cause of action, identify the allegations, and demonstrate that their conduct fit one of the categories identified in section 425.16, subdivision (e). The causes of action seeking a declaration of rights and duties under the agreement did not arise from an act in furtherance of the Elysian and the Bouskills right of free speech or petition. Their argument that each cause of action against them was based on Lewis's representations about holding money in trust and fraud allegations was unpersuasive. Lewis's statements were not made during the course of settlement negotiations. His statements concerned the collection of payment under the 2008 settlement, which had been finalized a year earlier. There is no protection for fraudulent statements made during the collection of money owed. The court continued the hearing to April 12, 2013. After further argument, the trial court denied both anti-SLAPP motions. Elysian, the Bouskills, and the attorneys appealed from the order denying the anti-SLAPP motions.

11

# DISCUSSION

## Statutory Scheme and Standard of Review

Subdivision (b)(1) of section 425.16 provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

"[S]ection 425.16 requires that a court engage in a two-step process when determining whether a defendant's anti-SLAPP motion should be granted. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one 'arising from' protected activity. (§ 425.16, subd. (b)(1).)" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76.) "The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).)" (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) "'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)' [citation]." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88.) "If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim." (*City of Cotati v. Cashman*, *supra*, at p. 76.)

We review an order granting or denying a motion to strike under section 425.16 under the de novo standard of review, applying the same two-step procedure as the trial court. (*Malin v. Singer* (2013) 217 Cal.App.4th 1283, 1293; *Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, 444 (*Gerbosi*).)

12

## Post-Settlement Acts Were Not Protected Activity

The attorneys contend the Knittels' cause of action for fraud arises from protected activity under the anti-SLAPP statute. We disagree.

"A cause of action 'arising from protected activity' means that the defendant's acts underpinning the plaintiff's cause of action involved an exercise of the right of petition or free speech. [Citation.]" (*Gerbosi, supra,* 193 Cal.App.4th at p. 443.)

Section 425.16, subdivision (e) sets forth four categories of speech or petitioning activity protected under the statute. An "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

"In general, whether a cause of action is subject to a motion to strike under the SLAPP statute turns on whether the gravamen of the cause of action targets protected activity. [Citation.] If liability is not based on protected activity, the cause of action does not target the protected activity and is therefore not subject to the SLAPP statute. [Citations.]" (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1550.) "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier v. Sletten, supra,* 29 Cal.4th at p. 92.)

13

"[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute. [Citation.] Moreover, that a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such. [Citation.] In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity. [Citations.]" (*Navellier v. Sletten, supra,* 29 Cal.4th at p. 89.) "The additional fact that protected activity may lurk in the background—and may explain why the rift between the parties arose in the first place—does not transform a property dispute into a SLAPP suit." (*In re Episcopal Church Cases* (2009) 45 Cal.4th 467, 478.)

" ' " '[T]he act underlying the plaintiff's cause' or 'the act which forms the basis for the plaintiff's cause of action' must *itself* have been an act in furtherance of the right of petition or free speech." [Citation.]' [Citation.]" (*World Financial Group, Inc. v. HBW Ins. & Financial Services, Inc.* (2009) 172 Cal.App.4th 1561, 1568-1569.)

In *Applied Business Software, Inc. v. Pacific Mortg. Exchange, Inc.* (2008) 164 Cal.App.4th 1108, the appellate court considered whether an action for breach of a settlement agreement involved protected activity under the anti-SLAPP statute. The court stated, "We find no merit in defendant's contention that (1) because settlement agreements that are entered into in judicial proceedings fit within descriptive provisions in subdivision (e) of section 425.16 (writings made in judicial proceedings, and writings made in connection with issues under consideration in judicial proceedings), and (2) because such settlement agreements are thus the product of an act taken by a party to the judicial proceeding in furtherance of that party's right of petition, then (3) a suit that is brought by one of the signatories to the settlement agreement against another signatory to that agreement for the purpose of enforcing the agreement is necessarily based on the defendant's protected activity because entering into a settlement agreement in a judicial proceeding is protected activity. Based on that reasoning, defendant asserts that it necessarily follows that in *all* such enforcement suits, the burden is automatically shifted to the plaintiff, under section 425.16, to prove a probability of prevailing in the suit." (*Id.*

at p. 1117.)  The court held that "entering into the settlement agreement during the pendency of the federal case was indeed a protected activity, but defendant's subsequent alleged breach of the settlement agreement after the federal case was concluded is not protected activity because it cannot be said that the alleged breaching activity was undertaken by defendant in furtherance of defendant's right of petition or free speech, as those rights are defined in section 425.16." (*Id.* at p. 1118.)

In this case, the Knittels' fraud cause of action is based on Lewis's statements about the collection of payment under the 2008 settlement.  None of his statements can reasonably be said to have been made in furtherance of his clients' right of petition or free speech in connection with a public issue.  The underlying action concluded the previous year.  It is irrelevant that different attorneys for the parties were negotiating a release in the unrelated wrongful death action.  Lewis's statements were not in furtherance of the Bouskills' right of petition with respect to the wrongful death action, because he was not involved in the wrongful death action or the negotiation of the release.  The negotiation of the release is not the basis of the Knittels' cause of action for fraud.  The fraud cause of action is based on defendants' representations that the Bouskills complied with provisions of the 2008 settlement agreement and funds were held in trust for the Knittels, which the Knittels allege were false statements.  Because the attorneys failed to meet their burden to show the fraud cause of action was based on protected activities, the burden never shifted to the Knittels to show a probability of prevailing on their claims and we need not discuss the second prong of section 425.16.

The anti-SLAPP motion filed by Elysian and the Bouskills similarly failed to show the complaint alleged liability based on a protected activity.  The discussion of the fraud cause of action applies equally to the anti-SLAPP motion filed by Elysian and the Bouskills.  They argue the entire complaint is based on the Knittels' fraud allegations, but this is not the case.  They have not shown causes of action for a declaration of rights, reformation, or rescission arise from a protected activity undertaken by the Bouskills or Elysian.  The order denying the anti-SLAPP motions must be affirmed.

15

## DISPOSITION

The order denying the motions to strike is affirmed.  Respondents Edna and Dennis Knittel are awarded their costs on appeal.


KRIEGLER, J.


We concur:



TURNER, P. J.



MINK, J.*

---

* Retired judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16