Filed 4/11/16  Holy Apostolic Catholic Assyrian Church of the East v. Storms CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| HOLY APOSTOLIC CATHOLIC ASSYRIAN CHURCH OF THE EAST etc., | F071467 |
| Plaintiff and Respondent, | (Super. Ct. No. 2011147) |
| v. | **OPINION** |
| KEVIN STORMS, | |
| Defendant and Appellant. | |

### THE COURT*

APPEAL from a judgment of the Superior Court of Stanislaus County. Timothy W. Salter, Judge.

Dan Farrar for Defendant and Appellant.

Dickerson Law and Brett L. Dickerson for Plaintiff and Respondent.

---

\*       Before Kane, Acting P.J., Franson, J. and Peña, J.

## INTRODUCTION

Respondent Holy Apostolic Catholic Assyrian Church of the East, Diocese of Western California, Religious Corporation dba the Larsa Banquet Hall (hereafter Larsa) operates an entertainment hall (Hall). Appellant Kevin Storms (hereafter Kevin) is a neighboring resident. Kevin made several complaints to local law enforcement about music noise coming from the Hall that disturbed the peace and quiet of his home, which was located about 600 feet away. Hall filed a complaint alleging that Kevin's reports to law enforcement were knowingly false when made. In its first amended complaint, Hall pled causes of action for intentional interference with prospective economic advantage, civil conspiracy, defamation and abuse of process. In addition, it sought a temporary restraining order, preliminary and permanent injunctive relief, which the trial court denied. Kevin filed a special anti-SLAPP motion to strike pursuant to Code of Civil Procedure section 425.16.[1] This motion was denied on the ground that not all of Kevin's actions were protected speech. We reverse and remand for the court to determine whether Larsa has established that there is a probability that it will prevail on the claim. (§ 425.16, subd. (b)(1).)

## PLEADINGS

The first amended complaint alleges that on four occasions Kevin knowingly caused to be filed noise complaints that had no basis in fact and which were carried out with the intent of interfering with Larsa's protected rights and interest in doing business. These complaints followed an earlier planning commission meeting in which Larsa was informed that if there were four more verified complaints within six months, a hearing would be scheduled to determine if its use permit for the operation of the hall should be

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

revoked.  Larsa alleges that this ultimatum from the planning commission motivated Kevin to lodge four false complaints with the sheriff's department, as it was his intent to cause Larsa's use permit to be revoked.  Larsa's pleading alleged causes of action for civil conspiracy, defamation, intentional interference with prospective economic advantage and abuse of process.  The pleading also sought injunctive relief.

Kevin filed a special motion to strike under section 425.16.  The motion included supporting declarations from Kevin and his wife, Tracee Storms.  Larsa filed opposition with supporting declarations and Kevin filed a reply.  A hearing was held and the court granted the motion to strike as to Tracee, but denied the motion as to Kevin for the reason that "not all of his actions were protected speech."  The court also denied Larsa's motion for a temporary restraining order, preliminary and permanent injunction on the basis that "it is overbroad, seeks to enjoin protected speech and the lack of evidence of irreparable harm."  Kevin appeals the denial of his motion to strike.

## EVIDENCE

The controlling county ordinance provides:

> "Sound-Amplifying Equipment and Live Music.  No person shall install, use or operate sound-amplifying equipment, or perform, or allow to be performed, live music unless the sound emanating from the sound-amplifying equipment or live music shall not be audible to the human ear at a distance greater than 200 feet.  To the extent that these requirements conflict with any conditions of approval attached to an underlying land use permit, these requirements shall control."  (Stanislaus Ord. No. 10.46.060(D).)

Both sides submitted declarations in support of their positions.  Kevin and his wife submitted declarations indicating that events at the Hall frequently caused loud music to disturb them in their home located 600 feet from the Hall.  They tried to resolve the issue directly with Larsa, but were eventually told by a Larsa representative to stop contacting them.  When the noise problems continued, Kevin contacted the planning commission, the sheriff's department and Stanislaus County Code Enforcement.  Kevin declared that

3.

every complaint he made was based upon him hearing and feeling (bass) music coming from the Hall. He denied ever making a false complaint. Tracee's declaration essentially corroborated Kevin's declaration.

Larsa submitted declarations disputing Kevin's and Tracee's declarations. Sheriff's department incident reports were produced, in addition to personal accounts of people who were present when complaints were lodged against Larsa, which indicated either that no music was being played in the Hall at the time of the complaint or that the music noise coming from within the Hall could not be heard beyond 200 feet from the Hall.

In response to Larsa's assertion that sheriff's deputies, when called, could not hear the music from Kevin's house, Kevin responded by declaring there were occasions when the music and bass were bothering his family and he called the sheriff's department, but by the time the deputy showed up the music was turned down, only to be turned up again once the deputy left.

## DISCUSSION

### I.      Standard of Review

We review de novo the trial court's ruling to grant or deny an anti-SLAPP motion. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325 (*Flatley*).) "Resolving the merits of a section 425.16 motion involves a two-part analysis, concentrating initially on whether the challenged cause of action arises from protected activity within the meaning of the statute and, if it does, proceeding secondly to whether the plaintiff can establish a probability of prevailing on the merits." (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699.) In our de novo review, "'[w]e consider "the pleadings, and supporting and opposing affidavits … upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) However, we neither "weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff

4.

[citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." [Citation.]'" (*Flatley*, *supra*, at p. 326.)

## II. Overview of the Anti-SLAPP Statute

Section 425.16, subdivision (b)(1), provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." An act in furtherance of a person's right of petition or free speech is broadly defined by section 425.16, subdivision (e), to include the following: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, … or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

"[T]he Legislature enacted section 425.16, the anti-SLAPP statute, to provide for the early dismissal of unmeritorious claims filed to interfere with the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 315.) "The Legislature authorized the filing of a special motion to strike such claims (§ 425.16, subds. (b)(1), (f)), and expressly provided that section 425.16 should 'be construed broadly.'" (*Ibid.*; see § 425.16, subd. (a).) As noted, the resolution of an anti-SLAPP motion follows a two-step process: "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity.… [Second], [i]f the court finds such a showing has been made, it then

5.

determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc*. (2002) 29 Cal.4th 53, 67.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*).) The defendant has the burden on the first issue; the plaintiff has the burden on the second issue. (*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 928.)

To satisfy the first step, the moving defendant must show the cause of action arises from or is based on acts that come within one of the categories of section 425.16, subdivision (e). (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) If the defendant does not meet this threshold burden at the first step, the court denies the motion without addressing the second step. If the defendant makes the required showing, the burden shifts to the plaintiff to satisfy the second step of the anti-SLAPP analysis. (*Tuszynska v. Cunningham* (2011) 199 Cal.App.4th 257, 266–267.) To satisfy the second step, a plaintiff must state and substantiate a legally sufficient claim. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.) "'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." [Citations.]'" (*Ibid.*) "In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant (§ 425.16, subd. (b)(2)); though the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 (*Wilson*).)

Even if the gravamen of the complaint relates to speech, the defendant is precluded from using the anti-SLAPP statute to strike plaintiff's action if the defendant concedes or the evidence conclusively establishes that the assertedly protected speech or petition activity was illegal as a matter of law. (*Flatley*, *supra*, 39 Cal.4th at p. 320; *Navellier*, *supra*, 29 Cal.4th at pp. 94–95.) Adopting the appellate court's analysis in *Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, *Flatley* makes clear that it is only in the "narrow circumstance in which a defendant's assertedly protected activity could be found to be *illegal as a matter of law*" that such activity does not come within the purview of section 425.16. (*Flatley*, *supra*, at pp. 315–316, italics added.) It is only in *rare* cases in which the evidence is uncontroverted that criminal activity occurred and that a defendant's acts are not entitled to protection under section 425.16. (*Zucchet v. Galardi* (2014) 229 Cal.App.4th 1466, 1478.) When the alleged illegality of a defendant's activity is contested, then the claimed illegitimacy of a defendant's acts is an issue that the plaintiff must raise and support in discharging its burden under step two, that is, in demonstrating a probability of prevailing. (*Ibid.*)

## III.    Kevin Met His Burden Under the First Step of Section 425.16

Larsa acknowledges that the act of complaining to law enforcement is protected speech, but contends, once it is conclusively determined that the complaints were falsely made, that speech is no longer protected. (*Lefebvre v. Lefebvre* (2011) 199 Cal.App.4th 696, 701, 706 [where the defendant did not contest that she submitted an illegal, false criminal report in violation of Pen. Code, § 148.5, no constitutionally protected right of petition or free speech implicated and motion to strike properly denied].) We agree with the principle that, if it is established as a *matter of law* that Kevin's complaints to police were falsely made, his speech is not protected under section 425.16. We also agree with Larsa that a confession is not a prerequisite to establishing illegality. Nevertheless, the defendant's illegal conduct must be established as a matter of law. (*Flatley*, *supra,* 39

Cal.4th at p. 320.)  The flaw in Larsa's argument is that the evidence presented below does not conclusively establish that these complaints were falsely made.

Larsa cites *Gerbosi v. Gaims, Weil, West & Epstein, LLP (*20011) 193 Cal.App.4th 435, 446 (*Gerbosi*) and *Flatley*, *supra*, 39 Cal.4th at page 317, in arguing that Kevin's evidence is nothing more than an assertion he did nothing wrong, which is insufficient to overcome Larsa's evidence that his police calls were falsely made.  Contrary to Larsa's characterization, Kevin's evidence is more than a denial of wrongdoing.  His declaration does more than merely assert "that his underlying activity was constitutionally protected."  (*Flatley*, *supra*, at p. 317; *Gerbosi*, *supra*, at p. 446.)  The declarations of Kevin and Tracee describe specific instances in which they called the police when they could hear and feel the music noise emanating from the Hall.  Larsa's rebuttal evidence raises triable issues of fact, but does not conclusively establish that Kevin's reports of loud music were falsely made.

Larsa urges the court to find Kevin and Tracee's declarations incredible in light of the opposition evidence.  Where a factual dispute exists about the legitimacy of a defendant's conduct, it cannot be resolved under the first step of the anti-SLAPP motion statute (protected activity), but must be raised by the plaintiff in meeting its burden to show a probability of prevailing on the merits under the second step.  (*Flately*, *supra*, 39 Cal.4th at p. 315, italics added [it is only in the "narrow circumstance in which a defendant's assertedly protected activity could be found to be *illegal as a matter of law*" that such activity does not come within the purview of section 425.16.].)  In considering the conflicting evidence presented in an anti-SLAPP motion the court is not permitted to weigh credibility or compare the weight of the evidence.  (*Flatley*, *supra*, at p. 326; *Wilson*, *supra*, 28 Cal.4th at p. 821.)

In the instant case, the trial court never reached step two, that is, it never considered or ruled upon the question whether Larsa demonstrated a probability of prevailing on the merits.  Instead, it denied the motion under step one "on the ground that

not all of [Kevin's] actions were protected speech." For the reasons already stated, the 911 calls to the sheriff's department are protected speech. The only reason they would not be protected is if it could be established as a matter of law that such speech was illegal, and that showing has not been made.

The trial court did not elaborate on the reason for denying the motion to strike other than to say that not all of Kevin's actions were protected speech. Apparently, the trial court was persuaded by Larsa's argument that the 911 calls were not protected speech because they were falsely made and therefore criminal under Penal Code section 148.5. We find that conclusion to be error for the reasons already explained, namely, that the question of whether the police calls were falsely made is a disputed issue of fact and as such has not been, at this stage of the proceedings, established as a matter of law.

## IV.    CONCLUSION

Kevin met his burden of showing that the gravamen of the complaint against him arose from conduct in furtherance of the exercise of his constitutional rights to speech and petition. The evidence does not establish as a matter of law that his acts were illegal. Thus, the burden shifts to Larsa to establish a probability of prevailing. Since the trial court never considered that second step, we reverse and remand so that the court may consider and rule upon whether Larsa can meet its burden of showing a probability of prevailing.

## DISPOSITION

The order denying the motion to strike is reversed. The matter is remanded to the trial court to decide whether Larsa can meet its burden of showing a probability of prevailing on the merits. If the court rules that Larsa has met its burden, the motion to strike should be denied. If the court rules Larsa's burden has not been met, the motion to strike should be granted. Costs on appeal are awarded to Kevin.