Filed 12/21/22

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----


| | |
|---|---|
| CITY OF ROCKLIN, | C091172 |
| Plaintiff and Respondent, | (Super. Ct. No. PC20190309) |
| v. | |
| LEGACY FAMILY ADVENTURES-ROCKLIN, LLC, et al., | |
| Defendants and Appellants. | |


APPEAL from a judgment of the Superior Court of El Dorado County, Daniel B. Proud, Judge. (Retired judge of the El Dorado Super. Ct., assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed.

Weintraub Tobin Chediak Coleman Grodin and Brendan J. Begley for Defendants and Appellants.

Downey Brand, Sean J. Filippini and Christopher M. Kolkey for Plaintiff and Respondent.


1

Plaintiff City of Rocklin (City) filed an action against defendants Legacy Family Adventures-Rocklin, LLC, (LFA) and David Busch asserting 12 causes of action related to their joint undertaking involving the construction and operation of a theme park, Quarry Park Adventures. Defendants filed an anti-SLAPP[1] special motion to strike the first four causes of action pursuant to Code of Civil Procedure section 425.16.[2] The parties did not actively dispute that the speech at issue in those causes of action was commercial speech, to which section 425.16 does not apply. Instead, the primary issue the parties litigated was whether the speech concerning the theme park qualified under what we will refer to as the "artistic work" exception to the commercial speech exemption.[3] In opposing defendants' special motion to strike, the City requested attorney fees, asserting the motion was frivolous. The trial court denied defendants' special motion to strike, and, concluding the motion was indeed frivolous, granted the City's request for attorney fees. Defendants appeal from the subsequent order in which the trial court awarded the City specified attorney fees and costs.

On appeal, defendants assert (1) their special motion to strike was not frivolous because, even if we conclude a theme park is not an artistic work, reasonable attorneys could differ on the matter, (2) the trial court erred in failing to follow the mandatory procedures set forth section 128.5 in sanctioning them, and (3) certain rulings and the

---

[1] " 'SLAPP' is an acronym for 'strategic lawsuit against public participation.' " (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 381, fn. 1 (*Baral*).)

[2] Further undesignated statutory references are to the Code of Civil Procedure.

[3] Section 425.17, subdivision (d)(2) provides that the commercial speech exemption (§ 425.17, subd. (c)) does not apply to "[a]ny action against any person or entity based upon the creation, dissemination, exhibition, advertisement, or other similar promotion of any dramatic, literary, musical, political, or artistic work, including, but not limited to, a motion picture or television program, or an article published in a newspaper or magazine of general circulation."

"arbitrary rotation of trial judges" deprived them of their due process rights. We affirm and remand for a determination and award of the City's attorney fees on this appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Background and the City's Complaint*

According to the complaint, in 2016, Busch approached the City with a proposal for an adventure park. He "trumpeted his unrivaled experience and expertise in developing amusement and adventure parks" in Texas and furnished the City with a financial statement to demonstrate that, "if the City invested millions of dollars to build the park, [Busch] would make it a financial success."

On January 24, 2017, the Rocklin City Council met to consider whether to enter into a master agreement with LFA, of which Busch was chief executive officer and sole member. Busch "spoke extensively about his past successes with adventure and amusement parks and the unqualified success that the City's (yet to be constructed) Adventure Park would become under his direction." He characterized two of the Texas parks as " 'wildly successful.' "

However, according to the City, Busch "misrepresented and concealed that his only adventure park projects . . . were abject failures that were actively being investigated for child labor law violations." According to the City, those Texas adventure parks were "operational and financial disasters." They defaulted on financial obligations to lenders and, in 2016, "the entities failed and the Texas cities ended their long term agreements with the Busch entities after just two years." According to the City, Busch represented that two of his Texas theme parks were active, successful, and projected to realize substantial profits in 2016, even as "his companies' operation of both parks was completely shut down by that time amidst huge operational losses and unpaid obligations."

The City alleged that, in reliance on Busch's misrepresentations and concealments, it entered into the master agreement with LFA. The adventure park, Quarry Park

3

Adventures, was completed in September 2018 at a cost of $7 million, more than 200% higher than projected by LFA.

After the parties entered into a new operating agreement, and after the park opened, LFA furnished the City with revised projections. Among other things, year one operating profits were revised to an amount $300,000 less than projected six months earlier and the profits for the first three years were revised to be less than $600,000 as opposed to the $2 million originally projected. The revised projected attendance for the first 10 years was about half of prior projections. The revised projections established that LFA would not be able to honor its financial obligations to the City.

The City then performed a thorough investigation into Busch's background, which, according to the City, "revealed the . . . misrepresentations and concealments relating to Busch's Texas business dealings." The City entered into an exit agreement with LFA requiring LFA to vacate the park and cede control to the City.

The City filed a complaint asserting 12 causes of action. Four causes of action would become the subject of defendants' special motion to strike. The first cause of action, for fraud, pertained to Busch "tout[ing] his business acumen and alleged prior success in operating amusement parks, concealing and not disclosing his prior business failings," and misrepresenting the successfulness and viability of the theme parks in Texas. The second cause of action, also for fraud, was based on defendants' alleged misrepresentations and concealments "concerning the projected profitability and attendance levels for the adventure park, and the amount of capital necessary to design, construct, and operate the adventure park." The third cause of action, for negligent misrepresentation, was based on Busch's "numerous material misrepresentations . . . , including but not limited to representations concerning his business acumen, his alleged prior success in operating amusement parks, the projected profitability and attendance levels for the adventure park, and the anticipated amount of capital necessary to design, construct, and operate [the] adventure park." The fourth cause of action, for violation of

4

the unfair competition law (Bus. & Prof. Code, § 17200 et seq.), addressed defendants' "misrepresentations about Busch's prior business 'expertise,' the adventure park's anticipated attendance and profitability, amount of capital necessary to build the adventure park, and Busch's failure to install an experienced management team, provide sufficient staffing and course supervision, make the adventure park open for reasonable hours of operation, sufficiently market and advertise the adventure park, provide park security and patron safety, and other bad faith misconduct . . . ."

### *Defendants' Special Motion to Strike*

Defendants filed an anti-SLAPP special motion to strike the first four causes of action pursuant to section 425.16. Defendants asserted that these causes of action arose from protected activity. More specifically, defendants asserted Busch's remarks to the Rocklin City Council on January 24, 2017, were " 'oral statement[s] . . . made before a legislative, executive, or . . . other official proceeding' " within the meaning of section 425.16, subdivision (e)(1). Defendants further asserted Busch's initial proposal and e-mails prior to the city council meeting, and his subsequent communications, constituted " 'oral statement[s] or writing[s] made in connection with an issue under consideration or review by a legislative, [or] executive . . . body, or any other official proceeding' " within the meaning of section 425.16, subdivision (e)(2). Defendants asserted all of these communications constituted " 'written or oral statement[s] . . . in connection with an issue of public interest, or . . . other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest' " within the meaning of section 425.16, subdivision (e)(3) and (4).

Defendants asserted that, because all challenged claims were based, at least in part, on protected activity, the burden shifted to the City to establish a probability of success on the merits. They asserted the City could not meet this burden. Defendants asserted Busch's communications before the Rocklin City Council were privileged under

5

Civil Code section 47, subdivision (b). They also asserted the City could not establish actual and reasonable reliance.

***Exline's Expert Declaration***

In their memorandum of points and authorities, defendants did not address whether the speech at issue was commercial speech within the meaning of section 425.17, subdivision (c). Nor did they explicitly argue that, if the speech did constitute commercial speech, it qualified under the artistic work exception to the commercial speech exemption (§ 425.17, subd. (d)(2)), and therefore was still the proper subject of a special motion to strike. Nevertheless, with their motion papers, defendants submitted a declaration by David Exline of Exline Design & Architecture "which offers services in the concepting, master-planning, design and development of multiple project types including themed entertainment, mixed-use, commercial retail, museum, exhibit design, and custom residential projects." Exline offered an expert opinion as to the meaning of the term "art": "art can be anything that is perceptible to the senses that is conceived of and created by one or more persons through some combination of the creator's (or creators') passion and creativity that informs, changes or broadens the viewer's, reader's, listener's or patron's perception of life or the human experience (be it the world in which they live or a world that is alien to them)."

Exline opined that theme parks should be included in the definition of art because of the "billions of attendees who have now experienced and had their perceptions transformed and emotions influenced by the art of theme parks." He differentiated theme parks from amusement parks: " 'theme' is another word for 'story.' So as you visit a theme park, you are visiting a 'story park' because the attractions are based upon stories or ideas rather than just being rides or conveyance systems set on an asphalt parking lot." Exline continued: "theme parks are comparable to movies in that they both serve as a temporary escape from the daily travails of life while triggering the imagination and senses of patrons such that they become oriented to the themes that the park or movie

6

projects. Much like a movie triggers the senses of viewers to orient to the emotions or stories or circumstances of the characters in the film, a theme park triggers the senses of patrons to orient to the theme(s) being projected there. Theme parks, like movies, create an atmosphere where the guest is immersed in an environment beyond their own. For example, Disneyland projects a theme of fantasy characters and well- known children's stories. Similarly, Marine World projects a theme of oceanic life, and Six Flags is themed on the six flags that flew over Texas during its fight for independence with Mexico. Likewise, Worlds of Fun (which is made up of five themed worlds) is based upon Jules Verne's Around the World in 80 Days."

Exline also opined that Quarry Park Adventures as conceived constituted an artistic work. As we will discuss *post*, the trial court would sustain the City's evidentiary objection to these paragraphs.

### The City's Opposition

In opposition, the City asserted its claims fell within the commercial speech exemption in section 425.17, subdivision (c), rendering section 425.16 inapplicable. The City advanced several arguments as to why Quarry Park Adventures was not an artistic work within the meaning of section 425.17, subdivision (d)(2). The City further asserted that, where a court finds a special motion to strike is frivolous, the trial court must award reasonable attorney fees under section 425.16, subdivision (c)(1). The City maintained defendants' special motion to strike was frivolous because the commercial speech exemption clearly applied.

### Defendants' Reply

In reply, regarding the City's request for the imposition of sanctions, defendants only stated: "Defendants pause to note the City's frivolous claim that Defendants should be sanctioned for filing their anti-SLAPP motion. The City's position on this point is so facially untenable that it does not merit any further attention in this brief."

7

### *Tentative Ruling*

In a tentative ruling, the trial court denied defendants' special motion to strike and granted the City's request for an award of attorney fees in an amount to be determined in a separate noticed motion.

The trial court sustained the City's objection to paragraphs 14 to 16 of Exline's declaration, in which he opined that Quarry Park Adventures was a work of art, as well as appended exhibit B, renderings on which Exline relied in forming his opinion, as inadmissible case-specific hearsay. The court further concluded that, to the extent Exline opined a theme park qualifies as an artistic work under section 425.17, subdivision (d)(2), the court would not "consider such an opinion as binding" as such an opinion would be an inadmissible legal conclusion.

The trial court determined that the commercial speech exemption applied. The court further concluded the artistic work exception to the commercial speech exemption did not apply. The court stated that, to accept defendants' argument would "exceed the Legislature's intent . . . beyond all reason . . . ."

Turning to the City's request for attorney fees, the trial court noted defendants had not cited case law directly supporting their position. The court concluded any reasonable attorney would agree that a motion asserting the subject speech amounted to communications concerning an artistic work under section 425.17, subdivision (d)(2) "was totally devoid of merit." The court granted the City's request for attorney fees under section 425.16, subdivision (c)(1).

### *Order Denying Special Motion to Strike and Granting Attorney Fees*

After oral argument, the trial court adopted its tentative ruling, denying defendants' special motion to strike and awarding the City attorney fees and costs pursuant to section 425.16, subdivision (c)(1). In the order, the court expressly concluded that the commercial speech exemption applied (§ 425.17, subd. (c)), that it was

8

unreasonable to argue the applicability of the artistic work exception (§ 425.17, subd. (d)(2)), and that defendants' motion was frivolous.

## *Motion for Attorney Fees*

The City moved for attorney fees and costs in the amount of $72,854.41. In the absence of a request for oral argument, the trial court adopted its tentative ruling, as modified, awarding the City attorney fees in the amount of $72,798.65 plus $1,053.31 in costs for a total award of $73,851.96.

## DISCUSSION

## I

### *The Anti-SLAPP Special Motion to Strike and Relevant Statutory Provisions*

California's anti-SLAPP statute provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) "Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises from activity protected by section 425.16." (*Baral, supra*, 1 Cal.5th at p. 384.) "If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Ibid*.)

Section 425.17, subdivision (c) sets forth a commercial speech exemption from the applicability of the anti-SLAPP statute. Defendants have not affirmatively asserted that the speech at issue was not commercial speech. Instead, they rely on the artistic work exception in section 425.17, subdivision (d)(2).

Section 425.17, subdivision (d), among other things, carves out exceptions to which the commercial speech exemption does not apply. In other words, subdivision (d) excepts certain matters from the commercial speech exemption, rendering those matters

9

potentially subject to a section 425.16 special motion to strike.  Section 425.17, subdivision (d)(2) contains the artistic work exception.**4**

## II

### *Whether Assertion of the Artistic Work Exception Was Frivolous*

Defendants assert their special motion to strike and their invocation of the artistic work exception were meritorious or, at the least, not frivolous.

"If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5."  (§ 425.16, subd. (c)(1).)  " 'Frivolous' means totally and completely without merit or for the sole purpose of harassing an opposing party."  (§ 128.5, subd. (b)(2).)  " 'Frivolous in this context means that any reasonable attorney would agree the motion was totally devoid of merit.[5]

---

**4**     See footnote 3, *ante*.

For purposes of most expeditiously resolving this appeal, we do not analyze the City's contention that the speech at issue concerned not the proposed theme park or its qualities, but rather Busch's misrepresentations and concealments about himself, his qualifications and prior ventures, and the projected success of the theme park, and thus the speech was not "based upon the creation, dissemination, exhibition, advertisement, or other similar promotion" of an artistic work and did not implicate the artistic work exception.

**5**     We do not engraft onto this standard the additional requirement, advocated by defendants, that published authority must establish the matter was devoid of merit.  We do not read the cases on which defendants rely as establishing such a requirement.  (See *Rudisill v. California Coastal Com.* (2019) 35 Cal.App.5th 1062, 1072 [argument not frivolous where the issue "has apparently not been addressed in any reported decision"]; *Campagnone v. Enjoyable Pools & Spas Service & Repairs, Inc.* (2008) 163 Cal.App.4th 566, 573 [declining to impose sanctions where "there has (until now) been no published decision leaving no doubt" about the matter]; *Doran v. Magan* (1999) 76 Cal.App.4th 1287, 1296 [argument not frivolous where "[n]o statute, rule, or published case directly considers the question"].)  As of this writing, no published California case has relied on any of these cases for the proposition that published authority establishing total lack of

[Citation.]  An order awarding attorneys' fees pursuant to section 128.5, as incorporated in section 425.16, subdivision (c), is reviewed under the abuse of discretion test.  [Citation.]  A ruling amounts to an abuse of discretion when it exceeds the bounds of reason, and the burden is on the party complaining to establish that discretion was abused.' " (*Alfaro v. Waterhouse Management Corp.* (2022) 82 Cal.App.5th 26, 36-37 (*Alfaro*), quoting *Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, 450.)  However, appellate courts "review questions of law de novo." (*National Asian American Coalition v. Newsom* (2019) 33 Cal.App.5th 993, 1007; see also *Rudisill v. California Coastal Com., supra*, 35 Cal.App.5th at p. 1070 [appellate courts generally review questions of law independently; de novo review of discretionary award of attorney fees after trial warranted where determination of whether criteria for award has been satisfied amounts to statutory construction and a question of law].)

In asserting the trial court's determination was erroneous, defendants raise contentions addressed to two general issues.  The first issue is the trial court's evidentiary determinations.  The second issue is the merits of the court's determination that their motion was frivolous because the speech at issue did not involve an artistic work within the meaning of section 425.17, subdivision (d)(2).

### A.  Evidentiary Determinations

Defendants assert the trial court erred in dismissing Exline's opinion that theme parks in general may be considered artistic works.  In this regard, the court stated: "[T]o

merit is required for a finding of frivolousness.  Rather than expressing such a requirement, the courts in those cases were describing one rationale for why a matter was or was not frivolous.  Certainly, published authority confirming a matter is devoid of merit *could* establish frivolousness.  But, contrary to defendants' suggestion, published authority confirming a matter is devoid of merit is not a *requirement* for a determination that the matter is frivolous.  (See, e.g., *Malek Media Group, LLC v. AXQG Corp.* (2020) 58 Cal.App.5th 817, 834-835 ["appeal may be objectively frivolous if there is already a legal authority 'addressing the precise issue . . . raised' [citation], *or when appellant's arguments rest on negligible legal foundation*" (italics added)].)

the extent . . . Exline is purporting to state a legal opinion that the construction and operation of a Theme/Amusement Park is a creation, dissemination, exhibition, advertisement, or other similar promotion of any dramatic, literary, musical, political, or artistic work, the court will not consider such an opinion as binding. It is merely an inadmissible legal opinion/conclusion." According to defendants, weighing the value of Exline's opinion in this manner was error.

Defendants rely on language relevant to weighing evidence in considering a special motion to strike. The Supreme Court has described the second step of the anti-SLAPP inquiry, where the plaintiff must establish a probability of prevailing on the merits, " 'as a "summary-judgment-like procedure." [Citation.] The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law.' " (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940; accord, *Taus v. Loftus* (2007) 40 Cal.4th 683, 714 [in " 'deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant [citation]; though the court does not *weigh* the credibility or comparative probative strength of competing evidence' "; Legislature did not intend that a court would weigh conflicting evidence to determine whether it is probable plaintiff will prevail on the merits, but rather intended to establish a summary-judgment-like procedure].)

Of course, the second step of the inquiry is not what is at issue here. Rather, here, at issue was the first step of the inquiry, whether "the challenged claim arises from activity protected by section 425.16" (*Baral, supra*, 1 Cal.5th at p. 384), whether the speech at issue was commercial speech (§ 425.17, subd. (c)), and, if so, whether the artistic work exception applied (§ 425.17, subd. (d)(2)). We cannot conclude the trial

12

court erred in stating that it would not consider Exline's opinion that a theme park can constitute an artistic work as "binding." As we discuss immediately *post*, the court properly did not find itself bound to accept Exline's opinion that a theme park can constitute an artistic work and thus, in effect, cede to Exline the legal determination based on statutory interpretation as to whether a theme park can constitute an "artistic work" within the meaning of section 425.17, subdivision (d)(2).

An expert may testify to an opinion "[r]elated to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." (Evid. Code, § 801, subd. (a).) "Testimony in the form of an opinion that is otherwise admissible is not objectionable because it embraces the ultimate issue to be decided by the trier of fact." (Evid. Code, § 805.) However, an expert is not permitted to give an opinion on questions of law or legal conclusions. (*Issakhani v. Shadow Glen Homeowners Assn., Inc.* (2021) 63 Cal.App.5th 917, 934 ["meaning and purpose of a legislative enactment is a question of law for the court; an expert's opinion on such matters is an inadmissible legal conclusion"]; *Palmieri v. State Personnel Bd.* (2018) 28 Cal.App.5th 845, 860 ["the effect of California statutes presents purely legal questions outside the province of expert witnesses"]; *People v. Jo* (2017) 15 Cal.App.5th 1128, 1176 [expert opinion on question of law inadmissible]; *Downer v. Bramet* (1984) 152 Cal.App.3d 837, 841 [expert may not "testify to legal conclusions in the guise of expert opinion"].) It is the role of the judge to decide purely legal issues. (*Summers v. A. L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1182.) We conclude the trial court did not improperly conclude that, inasmuch as Exline's opinion was that a theme park can constitute an artistic work, Exline's opinion amounted to a conclusion of law as to the statutory interpretation of section 425.17, subdivision (d)(2), and was thus not a proper basis for an expert opinion.

Defendants contend that the trial court improperly substituted its own opinion about what is and is not art for Exline's opinion. We disagree. We conclude that the trial

13

court merely carried out its duty to interpret the statute and made its determination as a matter of law as to whether a theme park can qualify as an artistic work under section 425.17, subdivision (d)(2).

Defendants also assert the trial court committed error in excluding Exline's specific opinions that Quarry Park Adventures could be considered an artistic work. The trial court sustained the City's objections to paragraphs 14 to 16 of the Exline declaration. Those paragraphs contained Exline's description of Quarry Park Adventures, based on his review of renderings detailing defendants' vision for the theme park, and his opinion based on that review that Quarry Park Adventures would constitute a work of art. The trial court correctly sustained the City's objection to so much of these paragraphs as relayed case-specific hearsay. (*People v. Sanchez* (2016) 63 Cal.4th 665, 676 ["Case-specific facts are those relating to the particular events and participants alleged to have been involved in the case being tried"], 686 ["What an expert *cannot* do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"].) As defendants note, an "expert may still *rely* on hearsay in forming an opinion, and may tell the jury *in general terms* that he did so." (*Id*. at p. 685.) However, Exline described the case-specific facts of the park as envisioned, which is why the court sustained the City's hearsay objection.

Defendants maintain that "even if it could be said that Exline's reliance on such material was problematic, the Superior Court was still required, as a matter of law, to consider his opinion." They assert that, because they could cure at trial any admissibility issues related to the matters on which Exline relied, the trial court was obligated as a matter of law to consider those matters.[6] They rely on *Fashion 21 v. Coalition for*

---

[6] At oral argument before the trial court, defendants asserted it would be just as easy to have Busch testify concerning his vision for the theme park and to authenticate the

14

*Humane Immigrant Rights of Los Angeles* (2004) 117 Cal.App.4th 1138 (*Fashion 21*). In *Fashion 21*, in the second step of the section 425.16 process, the court addressed whether the trial court erred in considering the plaintiffs' edited videotape, which had not been properly authenticated, in evaluating their probability of prevailing on the merits. (*Fashion 21*, at pp. 1145-1149.) Noting the ease with which, in most cases, a party could have such evidence authenticated, the court concluded: "Given the high probability Fashion 21 would succeed in offering the videotape into evidence at trial and the 'minimal' showing necessary to overcome a SLAPP motion, we hold the trial court did not commit reversible error in considering the videotape in determining Fashion 21's likelihood of prevailing . . . ." (*Id*. at p. 1148, fn. omitted.)

*Fashion 21* addresses the consideration of evidence in the second, summary-judgment-like step of the section 425.16 analytical framework. (*Fashion 21, supra*, 117 Cal.App.4th at p. 1145.) Additionally, the *Fashion 21* court considered evidence proffered by the plaintiffs, who had a limited period of time within which to respond to defendants' special motion to strike. We also note that "[a]n appellate court's ruling that a trial court did not abuse its discretion in *admitting* a certain type of evidence is not authority for the proposition that it is an abuse of discretion *to exclude* similar evidence in another case." (*Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1318.)

In any event, assuming the rule in *Fashion 21* applies to these different circumstances, assuming that rule is available to a defendant in attempting to satisfy the first step showing on a special motion to strike, assuming the hearsay objections would be easily overcome at trial, and assuming Exline's opinion testimony about the nature of the proposed theme park as envisioned would be admissible, we shall conclude in part

_____

renderings on which Exline relied, thus overcoming any hearsay obstacles to admissibility.

15

II.B., *post*, that the trial court properly determined that Quarry Park Adventures is not an artistic work within the statutory meaning of section 425.17, subdivision (d)(2).  As such, the trial court's failure to consider Exline's contrary opinion in this regard did not prejudice defendants.

Defendants also assert the trial court erred in excluding evidence they submitted with their opposition to the City's subsequent noticed fee motion relevant to whether reasonable attorneys could differ on whether a theme park can be deemed an artistic work and thus whether their motion was nonfrivolous.  Defendants assert this was new evidence they "were precluded from filing previously" because they could not submit new evidence with their special motion to strike reply papers.

The case on which defendants rely states that "[t]he general rule of motion practice, which applies here, is that new evidence is not permitted with reply papers." (*Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1537.)  Based on this rule and logic, defendants could certainly argue they were precluded from filing evidence with their reply papers relevant to either prong of the two-step analytical framework applicable to a section 425.16 special motion to strike.  However, the rule and logic do *not* apply to the specific circumstances here.  The evidence was to be offered in opposition to the City's request for sanctions under section 425.16, subdivision (c)(1), which the City raised for the first time in its response to defendants' special motion to strike.  If they wanted to be heard on the matter, defendants were obligated to present argument and evidence with their reply papers since the trial court was to make its determination on the matter upon submission of their reply, after issuance of a tentative ruling, and following oral argument.  Contrary to defendants' contention, they were not precluded from filing the evidence with their reply.  Instead, however, in reply, they expressly made the tactical choice not to respond substantively to the City's request for sanctions.  The trial court did not abuse its discretion in declining to consider defendants' evidence, belatedly filed in opposition to the City's subsequent noticed motion after defendants already had the

16

opportunity to respond and elected not to and after the court rendered its determination on the matter.

### B. The Determination That the Motion Was Frivolous

Defendants maintain the trial court's "conclusions concerning the artistic-work [exception] were . . . prejudicially wrong," and its "reasons for rejecting the artistic-work [exception] ran afoul of controlling precedents and fundamental principles of California law." They assert that, even if we were to conclude a theme park is not an artistic work, reasonable attorneys could differ on the matter. Defendants emphasize that their expert's opinion supported their position and the absence of authority to the contrary. They assert their reliance on the artistic work exception presented a unique issue that no court had decided in a published decision.

The parties have not offered any case law directly addressing whether a theme park does or can constitute an artistic work within the meaning of section 425.17, subdivision (d)(2). Nor have we found any such case law in our independent research.

" ' "Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. [Citation.] We must look to the statute's words and give them their usual and ordinary meaning. [Citation.] The statute's plain meaning controls the court's interpretation unless its words are ambiguous." [Citations.] If the words in the statute do not, by themselves, provide a reliable indicator of legislative intent, "[s]tatutory ambiguities often may be resolved by examining the context in which the language appears and adopting the construction which best serves to harmonize the statute internally and with related statutes. [Citation.]" [Citation.] . . . If the statute is ambiguous, we may consider a variety of extrinsic aids, including legislative history, the statute's purpose, and public policy.' " (*People v. Lucero* (2019) 41 Cal.App.5th 370, 394-395; accord, *Union of Medical Marijuana Patients, Inc. v. City of San Diego* (2019) 7 Cal.5th 1171, 1183-1184.)

17

It may be said that, like beauty, art is in the eye of the beholder.  And it is self-evident that, while many might agree as to whether any given thing constitutes an artistic work, often, not all will.  We do not find the language of section 425.17, subdivision (d)(2) to be particularly cryptic or impenetrable.  But that is not to say we are prepared to assign a "plain meaning" to the term "artistic work" subject to certain application.

Nor is resorting to dictionary definitions particularly helpful here.  Two definitions of "work," among many, are "something produced or accomplished by effort, exertion, or exercise of skill," and "something produced by the exercise of creative talent or expenditure of creative effort : artistic production."  (Merriam-Webster's Collegiate Dict. (11th ed. 2011) p. 1442.)  Two definitions of "artistic" are "of, relating to, or characteristic of art or artists," and "showing imaginative skill in arrangement or execution."  (Merriam-Webster's Collegiate Dict. (11th ed. 2011) p. 70.)  "Art" is defined, among other things, as "the conscious use of skill and creative imagination esp. in the production of aesthetic objects; *also* : works so produced."  (Merriam-Webster's Collegiate Dict. (11th ed. 2011) p. 69.)  In light of a degree of inherent ambiguity in such a term, we resort to extrinsic aids to assist in our interpretation of the statute.[7]

"The Senate Analysis of section 425.17, subdivision (d), indicates it was intended to ' "exempt the news media and other media defendants (such as the motion picture industry) from the bill when the underlying act relates to news gathering and reporting to the public with respect to the news media or to activities involv[ed in] the creation or

---

[7]    The finding of any ambiguity does not necessarily negate the possibility that " 'any reasonable attorney would agree the motion was totally devoid of merit.' " (*Alfaro, supra*, 82 Cal.App.5th at p. 36.)  In other words, the mere existence of some degree of ambiguity does not establish that reasonable attorneys would differ on the matter.  Rather, a reasonable attorney would perform research into publicly available case law and legislative materials to determine whether there would be any merit whatsoever to a special motion to strike on the grounds at issue here or if instead such a motion would be completely devoid of merit.

18

dissemination of any works of a motion picture or television studio. For claims arising from these activities, the current SLAPP motion would remain available to these defendants." ' "[8] (*Dyer v. Childress* (2007) 147 Cal.App.4th 1273, 1283, quoting *Ingels v. Westwood One Broadcasting Services, Inc.* (2005) 129 Cal.App.4th 1050, 1067-1068 & Sen. Com. on Judiciary, Analysis of Sen. Bill No. 515 (2003-2004 Reg. Sess.) as amended May 1, 2003, p. 14.)

"However, subsequent analyses depict the scope of this subdivision in more expansive terms. An Assembly Committee report states that the subdivision would permit 'the anti-SLAPP motion to be employed against claims arising from gathering, receiving or processing information for communication to the public by a publisher, editor, reporter, or other person connected with or employed upon a newspaper, magazine, or other periodical publication, press association or wire service, . . . *or an action based upon the creation or promotion of a dramatic, literary, musical, political or artistic work.*' [Citation.] It further indicates that the subdivision in question excludes 'specified persons and entities, such as those engaged in *speech-related activities*, specified nonprofits, and *actions against persons* or entities *based on the creation or promotion of constitutionally protected artistic works and the like*.' " (*Major v. Silna* (2005) 134 Cal.App.4th 1485, 1497 (*Major*), quoting Assem. Com. on Judiciary, Analysis of Sen. Bill No. 515 (2003-2004 Reg. Sess.) as amended June 27, 2003, pp. 3 & 12.)

Aided by this legislative history, we conclude Quarry Park Adventures is not an enterprise of the character intended to be excepted from the commercial speech exemption to section 425.16. Quarry Park Adventures is not involved in news or

---

[8] On our own motion, we take judicial notice of the cognizable legislative history of section 425.17 discussed herein. (Evid. Code, §§ 452, subd. (c), 459; *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26.)

19

information gathering or dissemination or anything remotely similar. (See Sen. Com. on Judiciary, Analysis of Sen. Bill No. 515 (2003-2004 Reg. Sess.) as amended May 1, 2003, p. 14; *Dyer v. Childress, supra*, 147 Cal.App.4th at p. 1283; *Ingels v. Westwood One Broadcasting Services, Inc., supra*, 129 Cal.App.4th at pp. 1067-1068.) Moreover, we would not characterize Quarry Park Adventures as involving constitutionally protected artistic works. (See Assem. Com. on Judiciary, Analysis of Sen. Bill No. 515 (2003-2004 Reg. Sess.) as amended June 27, 2003, pp. 3 & 12; *Major, supra*, 134 Cal.App.4th at p. 1497.)

Furthermore, while the parameters of what constitutes art may not be precisely clear, not everything can be called art. This is what undermines Exline's attempt at a definition of art: that definition is so broad it essentially encompasses everything. As the City urged, and the trial court concluded, this definition is so broad that virtually everything may come within its scope. While Quarry Park Adventures may have artistic qualities, that does not make it an artistic work.

Defendants assert the trial court misapplied or misunderstood the doctrine of *ejusdem generis*. "*Ejusdem generis* means ' " ' "of the same kind" ' " ' [citation], and provides that, 'when a particular class of things modifies general words, those general words are construed as applying only to things of the same nature or class as those enumerated. [Citation.] This canon of statutory construction . . . " 'applies whether the specific words follow general words in a statute or vice versa. In either event, the general term or category is "restricted to those things that are similar to those which are enumerated specifically." ' " ' " (*People v. Lucero, supra*, 41 Cal.App.5th at p. 398.) Defendants assert the trial court improperly concluded that something only qualifies as an artistic work if it is of the specific type of work appearing in the statute. During oral argument, the trial court did ask whether the examples in the statute indicated "that they are definitely not talking about theme parks." As defendants pointed out, "The phrase 'including, but not limited to' is a term of enlargement, and signals the Legislature's

20

intent that subdivision (d)(2) applies to items not specifically listed in the provision." (*Major, supra*, 134 Cal.App.4th at p. 1495.) We see no indication the trial court misconstrued or misapplied the doctrine of *ejusdem generis*.

Defendants urge that, if we affirm, "it would be injudicious" for us to do so without providing "a suitable definition of art." Of course, if there is to be a particular definition of what constitutes an artistic work, that is for the Legislature to supply. In our role of interpreting the law, we will not go so far as to draft and set forth what we believe to be the Legislature's intended definition of what constitutes an artistic work. (See *California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633 [" 'the judicial role in a democratic society is fundamentally to interpret laws, not to write them. The latter power belongs primarily to the people and the political branches of government' "].)

In sum, we conclude the trial court did not abuse its discretion in awarding attorney fees to the City pursuant to section 128.5 as incorporated in section 425.16, subdivision (c). Based on the language of the statute as well as our consideration of the legislative history, we conclude that " 'any reasonable attorney would agree' " defendants' special motion to strike on the ground that the proposed theme park was an artistic work " 'was totally devoid of merit.' " (*Alfaro, supra*, 82 Cal.App.5th at p. 37.) Any reasonable attorney would agree Quarry Park Adventures is not of the same or similar character as those items appearing in section 425.17, subdivision (d)(2), and that it would not qualify as an artistic work.

### III

### *Whether the Trial Court Failed to Follow Proper Procedure*

Defendants assert the trial court failed to follow the mandatory procedures of section 128.5, subdivision (f) in sanctioning them. They assert they were not served with a 21-day safe-harbor notice to afford them the opportunity to correct the alleged infraction (§ 128.5, subd. (f)(1)(B)), and the City's sanction request was not made by

21

separate motion papers (§ 128.5, subd. (f)(1)(A)). Defendants emphasize that strict compliance with section 128.5 is required.

Because they did not raise their contentions concerning section 128.5 in the trial court, defendants have forfeited these contentions. (*Jansen Associates, Inc. v. Codercard, Inc.* (1990) 218 Cal.App.3d 1166, 1170 [by failing to raise the issue of inadequate notice under § 128.5 in the trial court, failing to request a further hearing, and failing to file a motion to reconsider, attorney Kennedy forfeited such contentions on appeal].) Defendants urge us to exercise our discretion to reach the issue which, they assert, involves a pure question of law based on undisputed facts, and which they further assert concerns vital public policies beyond these litigants. " '[T]he appellate court's discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue.' " (*In re Marriage of Elali & Marchoud* (2022) 79 Cal.App.5th 668, 682, quoting *In re S.B.* (2004) 32 Cal.4th 1287, 1293.) We disagree with defendants' contention that this issue presents a matter of vital public policy. We decline to exercise our discretion to decide defendants' forfeited claim.

## IV

### *Due Process*

Defendants assert that affirming the order and allowing the imposition of sanctions to stand will violate due process.

First, defendants assert that, because there has been no published decision leaving no doubt about the merit of their position, sanctioning them would violate due process. We have rejected defendants' advancement of this standard, and thus there is no due process violation.[9]

---

[9] See footnote 5, *ante*.

Defendants next assert that they "were barred from filing additional evidence with their reply brief to refute" the City's contention that their special motion to strike was frivolous and that the court improperly refused to consider the evidence they subsequently submitted with their opposition to the City's noticed fee motion. Defendants again rely on *Jay v. Mahaffey, supra*, 218 Cal.App.4th at pages 1537-1538. We have rejected this contention in part II.A., *ante*.

Defendants assert that they "were prejudiced by the arbitrary rotation of trial judges," and that the "musical chairs of jurists . . . frustrated due process." They claim Judge Sullivan prepared the tentative ruling but then went on vacation, placing Judge Olney "in the awkward position of contradicting the inclination of the regular judge . . . ."[10] Then, a third judge, Judge Proud, entertained the subsequent motion for attorney fees.[11]

Defendants assert that "[h]ad Judge Olney adjudicated the fees motion, he would have been free to reconsider his prior ruling based upon new evidence that Defendants submitted." Regardless of whether or not Judge Proud lacked the authority to reconsider a decision issued by Judge Olney, a different judge sitting in the same court (see *International Ins. Co. v. Superior Court* (1998) 62 Cal.App.4th 784, 786, fn. 2 [although

---

[10] This appears to be factually inaccurate. At oral argument, Judge Olney indicated he was sitting by assignment and that the "regular judge" was on vacation or at a conference. After the court decided to adopt the tentative decision, defendants' counsel stated he had not been aware the matter would be decided by a different judge than the judge who issued the tentative decision. Judge Olney responded, "I was here last week. I issued the tentative. It may have been prepared . . . for . . . Judge Sullivan's signature, but she's been out for two weeks, so it's been me."

[11] Defendants again claim that they were previously barred from presenting evidence to establish their motion was nonfrivolous and that this was their first opportunity to do so but the court would not accept their evidence. They thus assert they were denied the due process right to be heard. We have already rejected these contentions, and thus conclude there was no resulting due process violation.

"an order made by one judge ordinarily cannot be reconsidered by another judge of the same court, the unavailability of the first judge (such as by retirement) authorizes a new judge to entertain the reconsideration motion"]), defendants did not file a motion for reconsideration (§ 1008).  They opposed the motion for the specific fees claimed, but sought to submit evidence relevant to a determination the court had already made, that their motion was frivolous.  They had already had their opportunity to be heard and chose not to respond to the contention that the motion was frivolous, asserting instead that the matter was "so facially untenable" that no response was warranted.

Defendants also raise the possibility of Judge Olney choosing to reconsider his finding of frivolousness on the court's own motion.  We cannot conclude defendants were deprived of their due process rights because a trial court judge might have decided, on his own motion, to reconsider a prior determination.

Defendants further assert a due process violation resulted from the fact that a judge who did not participate in the underlying proceedings was not in as good a position to rule on the request for fees.  Defendants rely on the principle that "the experienced trial judge is best positioned to evaluate the professional services rendered in his or her courtroom."  (*Mikhaeilpoor v. BMW of North America, LLC* (2020) 48 Cal.App.5th 240, 246.)  This principle refers to the fact that a trial judge, considering matters unfolding in the trial court, is better suited to evaluate those matters than the appellate court reviewing the paper record.  This principle does not suggest a due process violation occurred here because more than one judge was involved in the proceedings.

Defendants have not established any violation of their due process rights.

## V

### *The City's Entitlement to Fees and Costs on Appeal*

The City asserts that, if we affirm, we should direct the trial court to award the City its appellate attorney fees and costs.

24

" ' "A statute authorizing an attorney fee award at the trial court level includes appellate attorney fees unless the statute specifically provides otherwise." ' " (*Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1426; accord, *Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1499.)  Section 425.16, subdivision (c)(1) provides, in part, that, "[i]f the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5."  "Section 425.16, subdivision (c), does not preclude recovery of appellate attorney fees; hence attorney fees recoverable under the statute include appellate fees."  (*Carpenter v. Jack in the Box Corp.* (2007) 151 Cal.App.4th 454, 461; *id*. at pp. 459-460.)

The City successfully opposed defendants' special motion to strike and the trial court found the motion to be frivolous, a determination we are affirming.  Section 425.16, subdivision (c) does not specifically provide that a prevailing plaintiff who establishes a special motion to strike is frivolous is not entitled to appellate attorney fees.  (See generally *Dowling v. Zimmerman, supra*, 85 Cal.App.4th at p. 1426; *Evans v. Unkow, supra*, 38 Cal.App.4th at p. 1499.)  Accordingly, the City is entitled to recover its appellate attorney fees and costs.  (*Carpenter v. Jack in the Box Corp., supra*, 151 Cal.App.4th at p. 461; see *Dowling*, at p. 1426; *Evans*, at p. 1499.)

## DISPOSITION

The order granting the City's motion for attorney fees and costs is affirmed. The City shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).) The matter is remanded for a determination of the City's attorney fees on this appeal.


                             /s/
                             HOCH, J.


We concur:


 /s/
MAURO, Acting P. J.


 /s/
BOULWARE EURIE, J.

26